TREG R. TAYLOR
ATTORNEY GENERAL
Ronald W. Opsahl (Alaska Bar No. 2108081)
Senior Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-5232
Facsimile: (907) 276-3697
Email: ron.opsahl@alaska.gov

Attorney for the State of Alaska

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| STATE OF ALASKA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | Civil Action No: 3:22-CV-00103-SLG<br><br>**FIRST AMENDED COMPLAINT TO QUIET TITLE AND FOR DECLARATORY JUDGMENT** |

Plaintiff State of Alaska hereby brings this civil action against the above-listed defendant for declaratory and injunctive relief. Plaintiff alleges as follows:

## INTRODUCTION

1. The State of Alaska (the "State"), through the office of the Attorney General, brings this action to quiet title to state-owned submerged land underlying the Twin Lakes and Chilikadrotna River and Turquoise Lake and Mulchatna River, Alaska, as detailed below (the "Subject Submerged Lands").

2. The Twin Lakes and Chilikadrotna River and Turquoise Lake and Mulchatna River, Alaska, as described below, (the "Subject Waters") are navigable-in-fact waters within the boundaries of the State of Alaska, and the State obtained ownership to the Subject Submerged Lands on the date of statehood pursuant to the Equal Footing Doctrine, the Submerged Lands Act, and the Alaska Statehood Act.

3. The State brings this action to quiet title because the United States claims ownership to portions of the Subject Submerged Lands underlying the Subject Waters, as described below. This claim of federal ownership creates a cloud on the State's title and causes uncertainty regarding the ownership, use, management, and control of the State's submerged lands.

4. In addition, the State brings this action seeking a declaration that portions of the Chilikadrotna River, as described below, were conveyed to the State by operation of the Equal Footing Doctrine, and therefore were not chargeable against the State's Statehood Act land entitlement. Defendant charged these navigable portions of the bed of the Chilikadrotna River against the State and therefore has improperly diminished the State's Statehood Act land entitlement.

## JURISDICTION AND VENUE

5. The State brings this action under the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, which authorizes a federal district court to adjudicate disputes over the title to real property in which the United States claims an interest, and under the Declaratory

Judgment Act, 28 U.S.C. § 2201, which authorizes a federal district court to declare the rights and legal relations of an interested party seeking such a declaration.

6. This Court has jurisdiction over this action because the QTA waives sovereign immunity of the Federal government to resolve disputes over the title to real property in which the United States claims an interest. *Id.*

7. The State satisfied the QTA's requirement to provide 180-days' notice of intent prior to the initiation of this action. *See* 28 U.S.C. § 2409a(m). By letter dated October 19, 2021, the Office of the Attorney General for the State of Alaska provided notice of its intent to file suit regarding the ownership of the Subject Submerged Lands underlying the Subject Waters to Honorable Deb Haaland Secretary of the Interior. Secretary Haaland received this notice on October 25, 2021. *See* Ex. 1 (attached hereto).

8. This is an action brought by a state and is timely under 28 U.S.C. § 2409a(g).

9. Federal district courts have exclusive original jurisdiction over civil actions arising under the QTA. 28 U.S.C. § 1346(f).

10. Venue is proper in this Court under 28 U.S.C. § 1391(e) because the lands at issue in this lawsuit are located within the District of Alaska.

11. A case or controversy has arisen over the State's ownership of the submerged lands described herein and its jurisdiction to regulate and control this land.

# PARTIES

12. The Plaintiff State of Alaska is a sovereign state, with a sovereign interest in the management and conservation of the beds of navigable rivers and other navigable waters and submerged lands to which it has title, including the Subject Submerged Lands. In bringing this lawsuit, the State seeks to confirm its right to manage its own lands, and to remediate and prevent the attendant harm of being deprived of this right.

13. Defendant United States of America ("United States") is a sovereign nation and claims an interest in the Subject Submerged Lands, as more fully set forth below.

# DESCRIPTION OF THE SUBJECT WATERS AND SUBMERGED LANDS

14. Twin Lakes is located in a remote Alaska wilderness and is comprised of two large lakes in Lake Clark National Park and Preserve near the Northeast corner of Lake and Peninsula Borough. It contains a six-mile long upper lake and smaller four-mile long lower lake joined and connected by a short connecting stream. The lakes outflow westward into the Chilikadrotna River. The portion of the Twin Lakes that constitutes the subject matter of this action includes all submerged lands between the ordinary high water lines of Twin Lakes within the following townships:

> T. 6 N., R. 26 W., Seward Meridian (S.M.);
> T. 6 N., R. 27 W., S.M.;
> T. 7 N., R. 25 W., S.M.;
> T. 7 N., R. 26 W., S.M.;
> T. 7 N., R. 27 W., S.M.

15. The Chilikadrotna River originates in Twin Lakes. It flows past the high peaks of Lake Clark National Park and Preserve and travels generally westward 62 miles

to its confluence with the Mulchatna River. The portion of the Chilikadrotna River that constitutes the subject matter of this action begins at the inlet of Twin Lakes in sections 19 and 30, T. 7 N., R. 25 W., S.M., through and connecting both lakes, and downstream to the eastern township line of T. 5 N., R. 31 W., S.M. This includes all lands between the ordinary high water lines of the left and right banks of Chilikadrotna River in the following townships:

        T. 7 N., R. 25 W., S.M.;
        T. 7 N., R. 26 W., S.M.;
        T. 6 N., R. 26 W., S.M.;
        T. 6 N., R. 27 W., S.M.;
        T. 7 N., R. 27 W., S.M.;
        T. 7 N., R. 28 W., S.M.;
        T. 7 N., R. 29 W., S.M.;
        T. 6 N., R. 29 W., S.M.;
        T. 6 N., R. 30 W., S.M.;
        T. 5 N., R. 30 W., S.M.

16.     Turquoise Lake is in Lake Clark National Park and Preserve. The 763 meter elevation lake of glacial origin lies on the west flank of the Neacola Mountains. Turquoise Lake is fed by meltwater from a small glacier on the south flank of Telaquana Mountain. At the western end, the lake is drained by the Mulchatna River, of which the lake forms its origin. The portion of the Turquoise Lake that constitutes the subject matter of this action includes all submerged lands between the ordinary high water lines of Turquoise Lake within the following townships:

        T. 8 N., R. 26 W., S.M.;
        T. 8 N., R. 27 W., S.M.

17. The Mulchatna River originates in Turquoise Lake on the west flank of the Alaska Range, about 165 miles from Anchorage, Alaska. The Mulchatna River is approximately 217 river miles in length. The portion of the Mulchatna River that constitutes the subject matter of this action includes the inlet of Turquoise Lake in Section 17, T. 8 N., R. 26 W., S.M., through the lake, and downstream to the south section line of Section 20, T. 9 N., R. 29 W., S.M., and all lands between the ordinary high-water lines of the left and right banks of the Mulchatna River within the following townships:

> T. 8 N., R. 26 W., S.M.;
> T. 8 N., R. 27 W., S.M.;
> T. 8 N., R. 28 W., S.M.;
> T. 8 N., R. 29 W., S.M.;
> T. 9 N., R. 29 W., S.M.

18. The Subject Waters have been used, and were susceptible of being used, in their natural and ordinary condition, as highways of commerce, over which trade and travel were or may have been conducted in the customary modes of trade and travel on water before Alaska became a state in 1959, and continued in that condition though the time of statehood.

## THE STATE'S TITLE TO THE SUBJECT SUBMERGED LANDS

19. The Equal Footing Doctrine of the U.S. Constitution guarantees to newly-admitted states the same rights enjoyed by the original thirteen states and other previously-admitted states. *Utah v. United States*, 482 U.S. 193, 196 (1987); *Alaska v.*

*Ahtna, Inc.*, 891 F.2d 1401, 1404 (9th Cir. 1989). This includes title ownership to lands underlying navigable and tidally influenced waters. *Utah*, 482 U.S. at 196.

20. In part, Congress codified the Equal Footing Doctrine with the Submerged Lands Act of 1953, and expressly vested in the states "title to and ownership of lands beneath navigable waters within the boundaries of respective States." 43 U.S.C. § 1311(a) (2012).[1] Congress expressly extended applicability of the Submerged Lands Act to Alaska in the Alaska Statehood Act. Pub. L. 85-508, § 6(m), 72 Stat. 339 (1958) (codified at 48 U.S.C. note prec. § 21).

21. Unless a valid pre-statehood withdrawal clearly included the Subject Submerged Lands and evinced an unambiguous intent to defeat Alaska's statehood title, Alaska was granted ownership of the Subject Submerged Lands by operation of law at statehood. *See United States v. Holt State Bank*, 270 U.S. 49, 55 (1926) (citing *Shively v. Bowlby*, 152 U.S. 1, 49, 57, 58 (1894)).

22. Congress has made no pre-statehood withdrawal that would defeat Alaska's title to the Subject Submerged Lands.

23. Thus, Alaska's title to the Subject Submerged Lands vested at statehood on January 3, 1959 by operation of the Equal Footing Doctrine, the Submerged Lands Act,

---

[1] In pertinent part, the Submerged Lands Act defines "lands beneath navigable waters" as:
> all lands within the boundaries of each of the respective States which are covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, or acquired sovereignty over such lands and waters thereafter, up to the ordinary high water mark as heretofore or hereafter modified by accretion, erosion, and reliction[.]

43 U.S.C. § 1301(a)(1).

and the Alaska Statehood Act.

## UNITED STATES' DETERMINATIONS OF NON-NAVIGABILITY OF SUBJECT WATERS AND OWNERSHIP OF THE SUBJECT SUBMERGED LANDS

24. Despite the State's title to the Subject Submerged Lands vesting at statehood, the United States, through the Bureau of Land Management ("BLM"), has failed to acknowledge the State's ownership. Instead, the United States has claimed that the Subject Waters are non-navigable, and hence did not convey to the State at statehood.

25. Specifically, the Alaska State Office of the BLM issued an administrative decision purporting to find that the Subject Waters are non-navigable on October 18, 1983.

26. This erroneous BLM decision regarding the navigability of the Subject Waters, and hence the ownership of the Subject Submerged Lands, casts a cloud on the rights and title of the State to the Subject Submerged Lands.

## NAVIGABILITY OF THE SUBJECT SUBMERGED LANDS

27. The Subject Waters are boatable by watercraft customary at statehood, or by modern watercraft meaningfully similar to watercraft customary at statehood, in use anywhere in the United States at the date the State achieved statehood.

28. State and federal employees have boated the disputed waters several times, including as recently as 2021.

29. State Department of Natural Resources employees boated Turquoise Lake and the Mulchatna River from July 23, 2021 through July 28, 2021 and Twin Lakes and

the Chilikadrotna River from August 28, 2021 through August 31, 2021 using inflatable rafts loaded with approximately 1,000 pounds of cargo and people.

30. State Department of Fish and Game employees have been reported boating the Subject Waters several times in inflatable rafts prior to July 1980.

31. Four federal employees (representing BLM and the National Park Service) and one Alaska state employee (from the Alaska Division of Parks) boated Turquoise Lake and the Mulchatna River from July 21, 1980 through August 1, 1980, using inflatable rafts.

32. Five federal employees (representing BLM, the National Park Service, and the Bureau of Recreation) and one Alaska state employee (from the Alaska Department of Fish and Game) boated Twin Lakes and the Chilikadrotna River from July 2, 1976 through July 8, 1976, using three inflatable rafts.

33. Six federal employees (representing the National Park Service and Department of Interior) boated Twin Lakes and the Chilikadrotna River from August 18, 1976 through August 22, 1976, using three inflatable rafts.

34. Modern inflatable rafts such as those used by State and federal employees are meaningfully similar to craft available at statehood. They have similar drafts, similar load capacities, and require similar river channel conditions.

35. The National Park Service currently describes the Subject Waters as boatable in canoes, kayaks, rafts, or pack rafts.

36. The Subject Waters were in their natural and ordinary conditions at the time of statehood and remain in their natural and ordinary conditions today.

37. The Subject Waters were navigable-in-fact as they were used or were susceptible of being used in their ordinary condition as a highway for commerce over which trade and travel may be conducted in the customary modes of trade and travel, including, but not limited to, the following specific uses: (a) in its fluid capacity as a highway—floating of logs, use by wooden and skin boats, log and inflatable rafts, power and jet boats, and canoes providing transportation for individuals and supplies, for subsistence and recreational guided and non-guided hunting and fishing activities, for trapping, mining and prospecting, freighting and similar purposes, related to commerce and travel; and (b) any other additional uses the State proves at trial.

**UNITED STATES' IMPROPER CHARGE OF SUBMERGED LANDS AGAINST THE STATE'S STATEHOOD ACT LAND ENTITLEMENT.**

38. The Alaska Statehood Act permits the State of Alaska to select approximately 103.5 million acres of public land in Alaska. 48 U.S.C. note prec. § 21.

39. However, under the Equal Footing Doctrine, its codification in the Submerged Lands Act, and its expressed adoption by the Statehood Act, title to the beds of navigable inland waterbodies passed from the United States to the State when the State entered the Union.

40. Because title to the beds of navigable waterbodies passed automatically to the State at the time of statehood, they were neither available for selection nor chargeable

*State of Alaska v. United States*  
First Amended Complaint

Civil Action No. 3:22-CV-00103-SLG  
Page 10 of 15

Case 3:22-cv-00103-SLG   Document 17   Filed 10/10/22   Page 10 of 15

to Alaska Statehood Act land entitlements. *Alaska v. United States*, 662 F. Supp. 455, 456-457 (D. Alaska 1987).

41. By Patent No. 50-2008-0040, on October 15, 2007, pursuant to the State's Statehood Act entitlement, the United States conveyed to the State, inter alia, T. 7 N., R. 29 W., S.M.; T. 6 N., R. 30 W., S.M.; T. 5 N., R. 30 W., S.M. Navigable portions of the Chilikadrotna River flow across these lands.

42. Despite the State's title to the Subject Submerged Lands vesting by operation of the Equal Footing Doctrine, the Submerged Lands, Act, and the Alaska Statehood Act, BLM improperly charged submerged lands under the Chilikadrotna River against the State's Statehood Act land entitlement. Specifically, BLM charged against the State's entitlement the bed of the Chilikadrotna River as it flows across T. 7 N., R. 29 W., S.M.; T. 6 N., R. 30 W., S.M.; T. 5 N., R. 30 W., S.M.

43. Upon information and belief, this improper accounting resulted in approximately 240 acres being improperly charged against the State's Statehood Act land entitlement.

## FIRST CLAIM FOR RELIEF
### (Quiet Title for the State against United States)

44. Plaintiff realleges the allegations contained in paragraphs 1–43 above.

45. Pursuant to 28 U.S.C. § 2409a, the United States is subject to suit to quiet title to real property in which both the State and the United States claim an interest.

46. The Subject Waters were navigable-in-fact at the time of statehood, and there were no valid pre-statehood withdrawals in effect for these disputed areas that

defeated the State's interest in the submerged lands. Therefore, title to the Subject Submerged Lands transferred to the State as a matter of law pursuant to the Equal Footing Doctrine, the Submerged Lands Act, and the Alaska Statehood Act.

47. The State is entitled to an order of this Court quieting title to the Subject Submerged Lands.

## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment)**

48. Plaintiff realleges the allegations contained in paragraphs 1–47 above.

49. The Subject Waters were navigable-in-fact at the time of statehood, and there were no valid pre-statehood withdrawals in effect for these disputed areas that defeated the State's interest in the submerged lands. Therefore, title to the Subject Submerged Lands transferred to the State as a matter of law pursuant to the Equal Footing Doctrine, the Submerged Lands Act, and the Alaska Statehood Act. Accordingly, the Subject Submerged Lands were not available for selection by the State nor chargeable against the State's Statehood Act land entitlement.

50. The United States denies the navigability of the Subject Waters, and therefore denies that title of the Subject Submerged Lands conveyed to the State at statehood.

51. Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Subject Waters were navigable in fact, or susceptible to navigation, at the time of statehood, and remain so today.

52. Further, pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that no pre-statehood withdrawal in effect at the time of statehood defeated the State's interest in Subject Submerged Lands.

53. Finally, pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Subject Submerged Lands, including the bed of the Chilikadrotna River as it flows across T. 7 N., R. 29 W., S.M.; T. 6 N., R. 30 W., S.M.; T. 5 N., R. 30 W., S.M. were not chargeable against the State's Statehood Act land entitlement.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff State of Alaska prays as follows:

1. That this Court enter an order quieting title in the State of Alaska to the Subject Submerged Lands, and declaring that the United States has no title thereto or interest therein.

2. That this Court enter judgment declaring that the Subject Waters are navigable-in-fact and that there were no pre-statehood withdrawals in effect at the time of statehood that defeated the State's interest to the Subject Submerged Lands.

3. That this Court enter judgment declaring that the Subject Submerged Lands were not chargeable against the State's Statehood Act land entitlement.

4. That the Plaintiff State of Alaska be awarded costs and attorney's fees.

5. For such further and other relief as the Court may deem just and proper.

DATED: October 10, 2022 at Anchorage, Alaska.

        TREG R. TAYLOR
        ATTORNEY GENERAL

By:   */s/ Ronald W. Opsahl*
      Ronald W. Opsahl (Alaska Bar No. 2108081)
      Senior Assistant Attorney General
      Department of Law
      1031 W. 4th Avenue, Suite 200
      Anchorage, Alaska 99501
      Telephone: (907) 269-5232
      Facsimile: (907) 279-2834
      Email: ron.opsahl@alaska.gov

      Attorney for the State of Alaska

# CERTIFICATE OF SERVICE

I certify that on **October 10, 2022**, the foregoing was served electronically on all parties listed on the CM/ECF system.

/s/ Christina M. Fisher
Law Office Assistant II