# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>              Plaintiff,<br><br>     v.<br><br>UNITED STATES OF AMERICA,<br><br>              Defendant. | Case No. 3:22-cv-00103-SLG |

## ORDER RE PARTIAL MOTION TO DISMISS

Before the Court at Docket 20 is Defendant United States of America's *Partial Motion to Dismiss*. Plaintiff State of Alaska (the "State") opposed the United States' motion at Docket 22. The United States replied at Docket 25. At the Court's request, the United States submitted supplemental briefing at Docket 32 and the State submitted supplemental briefing at Docket 33.

The Court heard oral argument on August 9, 2023. For the reasons set forth below, the Court grants the United States' motion but accords leave to amend to the State.

## BACKGROUND

This case is an action brought by the State pursuant to the Quiet Title Act (the "QTA"), 28 U.S.C. § 2409a, seeking to quiet title to submerged lands underlying portions of waterbodies located in and around Lake Clark National Park and Preserve, namely, Twin Lakes, the Chilikadrotna River, Turquoise Lake, and

the Mulchatna River (the "Subject Waters").[1] The State also seeks declarations pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that (1) the Subject Waters were navigable when Alaska became a state and remain navigable today; (2) there was no pre-statehood withdrawal of the submerged lands at the time Alaska became a state; and (3) the submerged lands underlying the Chilikadrotna River are not "chargeable" against the allotment of land to which the State is entitled pursuant to the Alaska Statehood Act of July 7, 1958 (the "Statehood Act"), Pub. L. No. 85-508, 72 Stat. 339.[2]

In 1972, the State selected pursuant to the Statehood Act a group of public lands located in townships that include the Subject Waters.[3] The State's selection, which it reaffirmed in 1981 and 1993,[4] included submerged lands beneath the Chilikadrotna River in three particular townships to which the parties refer as the "Undisputed Lands."[5] Between 1983 and 2007, the Bureau of Land Management

---

[1] Docket 17 at 1–2, ¶¶ 1–4 (Am. Compl.); *see also* Docket 20 at 11 (Partial Mot. to Dismiss) (depicting lands at issue).

[2] Docket 17 at 2, ¶¶ 2, 4; Docket 17 at 13.

[3] Docket 17 at 11, ¶ 41; Docket 20-4 (Jan. 24, 1972, State Selection Letter).

[4] The State reasserted and amended its selection through an August 17, 1981, letter, expressly noting then that its selection "exclude[s] those submerged lands and shorelands which underlie nontidal waters that were navigable under laws of the United States on the date of Alaska's admission to the Union, which lands have passed into Alaska's ownership on that date or subsequently by operation of the Submerged Lands Act of 1953 and Section 6(m) of the Alaska Statehood Act." Docket 20-6 at 1 (Aug. 17, 1981, State Top Filing Letter). An exhibit attached to the State's letter identifies the three townships in which the Undisputed Lands are located as included within the State's reasserted selection. Docket 20-6 at 2. The State sent BLM another letter referencing the same exclusion and reasserting and amending its selection on December 20, 1993. Docket 20-7 (Dec. 20, 1993, State Top Filing Letter).

[5] Docket 20 at 2; Docket 22 at 2, 4 n.2 (Response in Opp'n to Def.'s Partial Mot. to Dismiss);

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 2 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 2 of 9

("BLM") of the U.S. Department of the Interior ("DOI") followed the process prescribed by the Statehood Act to determine the navigability of the Subject Waters, approve the State's selection, survey the selected lands, and formally convey the lands to the State through a patent issued in 2007.[6] As required by federal law, the patent reserved a right-of-way in the United States' favor for the construction of ditches or canals.[7]

The State brought this action in 2022,[8] and the United States filed the instant partial motion to dismiss as its first formal response to this litigation.[9] The United States seeks to dismiss the State's claims as to the Undisputed Lands for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).

---

Docket 25 at 7 n.3 (Def.'s Reply in Supp. of Partial Mot. to Dismiss).

[6] Docket 17 at 8, ¶ 26; Docket 17 at 9, ¶¶ 31–33; Docket 17 at 11, ¶¶ 41–42; Docket 20-8 (May 13, 1983, BLM Navigability Report); Docket 20-10 (Aug. 17, 1983, Navigability Determination); Docket 20-11 (Aug. 17, 1983, Decision and Draft Tentative Approval); Docket 20-12 (Sept. 29, 1983, Final Tentative Approval); Docket 20-15 (Sept. 30, 2003, BLM Letter); Docket 20-16 (May 15, 2007, T6N, R30W Official Survey); Docket 20-17 (May 9, 2007, T7N, R29W Official Survey); Docket 20-18 (May 29, 2007, T5N, R30W Official Survey); Docket 20-19 (Oct. 15, 2007, Patent); Docket 20-20 (May 29, 2007, T6N, R32W Official Survey).

[7] Docket 20 at 19; Docket 20-19 at 4; Docket 22 at 8; Docket 25 at 5. The United States is required by law to reserve a right-of-way for the construction of ditches or canals in all patents issued after August 30, 1890, for lands located west of the one hundredth meridian. 43 U.S.C. § 945.

[8] *See generally* Docket 1 (Compl.).

[9] Docket 20.

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 3 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 3 of 9

**LEGAL STANDARD**

"The party asserting jurisdiction bears the burden of establishing subject matter jurisdiction," and so "[d]ismissal for lack of subject matter jurisdiction is appropriate if the complaint, considered in its entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction."[10] Accordingly, when a party brings a facial jurisdictional attack pursuant to Rule 12(b)(1), "the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction."[11] A "district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."[12]

**DISCUSSION**

In the portion of its partial motion to dismiss focused on Rule 12(b)(1), the United States contends that the State's operative complaint is jurisdictionally deficient because it fails to allege that the United States claims a property interest in the Undisputed Lands, which is one of the prerequisites for triggering the QTA's

---

[10] *Bishop Paiute Tribe v. Inyo County*, 863 F.3d 1144, 1151 (9th Cir. 2017) (citations omitted).

[11] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[12] *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)).

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 4 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 4 of 9

waiver of sovereign immunity.[13] In its briefing, the State asserts that it meets this prerequisite because the United States, when conveying the Undisputed Lands to the State, reserved a right-of-way interest for ditches and canals.[14] Because "a court cannot proceed at all" if it does not have "proper jurisdiction," the Court begins by addressing this threshold issue.[15]

I. **Pleading Jurisdiction Under the QTA**

The federal government enjoys sovereign immunity unless it waives its immunity and consents to be sued.[16] "A court lacks subject matter jurisdiction over a claim against the United States if it has not consented to be sued on that claim."[17] As a result, when the United States is the defendant, a court has subject matter jurisdiction only in those cases in which the United States explicitly has waived its sovereign immunity.[18] As the party with the burden of proof, the State must demonstrate that such a waiver exists.[19]

---

[13] Docket 20 at 18–19; Docket 43 at 2 (Oral Arg. Tr.).

[14] Docket 22 at 7.

[15] *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 84 (1998) (citations omitted).

[16] *Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999); *United States v. Mitchell*, 445 U.S. 535, 538 (1980).

[17] *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (citation omitted).

[18] *Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1087–88 (9th Cir. 2007).

[19] *Id.* at 1088; *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("[I]t follows that [the plaintiff] must carry throughout the litigation the burden of showing that he is properly in court.").

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 5 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 5 of 9

The QTA is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property,"[20] so in a suit concerning an interest in allegedly disputed property, "the waiver of sovereign immunity must be found, if at all, within the QTA."[21] The QTA contains such a waiver, allowing "[t]he United States [to] be named as a party defendant in a civil action . . . to adjudicate a disputed title to real property in which the United States claims an interest, other than a security interest or water rights."[22] Thus, a plaintiff bringing a quiet title action against the United States must allege in its complaint the following two conditions in order to establish that the United States has waived its sovereign immunity and that a federal district court has subject matter jurisdiction: (1) the United States claims an interest in the property at issue, and (2) there is a disputed title to real property.[23] In addition, a plaintiff in a QTA suit must meet a specific pleading standard: "The complaint shall set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property, the

---

[20] *N. Mariana Islands v. United States*, 279 F.3d 1070, 1072 (9th Cir. 2002) (alteration in original) (quoting *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir.1999) [hereinafter *Leisnoi I*]).

[21] *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir. 1994).

[22] 28 U.S.C. § 2409a(a).

[23] *Leisnoi I*, 170 F.3d at 1191; *see also Owyhee County v. United States*, Case No. 1:21-cv-00070-DKG, 2022 WL 1591895, at *10 (D. Idaho May 19, 2022) (dismissing plaintiffs' QTA claims because plaintiffs failed to adequately allege facts demonstrating the existence of a disputed title as to the property at issue).

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 6 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 6 of 9

circumstances under which it was acquired, and the right, title, or interest claimed by the United States."[24]

In its motion, the United States focuses on the fact that it has conveyed title to the Undisputed Lands to the State in 2007 and hence there is no disputed title.[25] In its opposition, the State agrees that it owns the Undisputed Lands but maintains that the right-of-way for ditches and canals that the United States reserved when it patented the Undisputed Lands to the State is sufficient evidence of a disputed title.[26] Citing to Ninth Circuit and other authority, the State maintains that "[r]eserved interests in rights-of-way have been held sufficient to support Quiet Title Act claims."[27]

However, the State's amended complaint does not identify the United States' interest at issue as the reserved right-of-way.[28] Instead, the complaint alleges that the "BLM decision regarding the navigability of the Subject Waters, and hence the ownership of the Subject Submerged Lands, casts a cloud on the

---

[24] 28 U.S.C. § 2409a(d).

[25] *See* Docket 20 at 19 ("The fact that Alaska owns the Undisputed Lands—including the submerged lands contained therein—is clear.").

[26] Docket 22 at 7 (citations omitted).

[27] Docket 22 at 7 (first citing *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1023 (9th Cir. 2001) [hereinafter *Leisnoi II*]; then citing *Leisnoi I*, 170 F.3d at 1191; then citing *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014); and then citing *Sch. Bd. of Avoyelles Parish v. U.S. Dep't of Interior*, 647 F.3d 570, 580 (5th Cir. 2011)).

[28] *See generally* Docket 17 (containing no reference to an easement or right-of-way).

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 7 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 7 of 9

rights and title of the State to the Subject Submerged Lands."[29] In making its determination that the Undisputed Lands were not navigable at statehood, the United States claimed an interest in those lands, satisfying the first element of the jurisdictional test.[30] But the State's complaint fails to allege the second jurisdictional element: the disputed title that stems from that navigability determination, i.e., the reserved easement.

The United States asserts that the existence of a right-of-way is a "new and unpleaded basis for asserting a disputed interest in title"[31] and without this allegation, the State's operative complaint is fatally deficient.[32] The Court agrees that the State has not met the QTA's heightened pleading standard as to the Undisputed Lands because the State's amended complaint does not identify "the right, title, or interest claimed by the United States,"[33] namely the reserved right-of-way it identifies in its briefing.[34] As a result, the State's amended complaint is deficient, and the Court must dismiss the State's claims as to the Undisputed

---

[29] Docket 17 at 8, ¶ 26.

[30] *See Leisnoi II*, 267 F.3d at 1023 (concluding that a quiet title action may be brought when "the United States claimed, and continues to claim, reserved easements in [another's] property").

[31] Docket 25 at 7.

[32] Docket 43 at 2 (Oral Arg. Tr.) ("We would submit that not having [the right-of-way allegation] in the complaint under the particularized pleading standard of 2409a(d) is still fatal.").

[33] 28 U.S.C. § 2409a(d).

[34] *See generally* Docket 17; Docket 22 at 4–5, 7.

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 8 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 8 of 9

Lands because subject matter jurisdiction has not been properly pleaded pursuant to Rule 12(b)(1).

"Leave to amend a deficient complaint shall be freely given when justice so requires," unless to do so would be futile.[35] Here, the State can readily amend its complaint to allege with specificity the right-of-way interest claimed by the United States in the Undisputed Lands, so dismissal with leave to amend is warranted. The United States may then opt to renew its partial motion to dismiss, at which time the Court can address the remainder of its assertions.

## CONCLUSION

In light of the foregoing, the United States' *Partial Motion to Dismiss* at Docket 20 is GRANTED because, as currently pleaded in the amended complaint, the Court lacks subject matter jurisdiction over the State's claims regarding the Undisputed Lands under the Chilikadrotna River. The State is accorded leave to amend to correct this jurisdictional deficiency and may file an amended complaint within 14 days of the date of this order.

DATED this 5th day of September, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[35] *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) (first citing Fed. R. Civ. P. 15(a); and then citing *Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir. 1988)).

Case No. 3:22-cv-00103-SLG, *Alaska v. United States*
Order re Partial Motion to Dismiss
Page 9 of 9
Case 3:22-cv-00103-SLG   Document 44   Filed 09/05/23   Page 9 of 9