Michael K. Robertson
U.S. Department of Justice
Environmental and Natural Resources Section
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Phone 202-305-9609
Fax 202-305-0506
michael.robertson@usdoj.gov

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

|  |  |  |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No: 3:22-cv-00103-SLG |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |

---

### DEFENDANT'S RENEWED PARTIAL MOTION TO DISMISS

---

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 1 of 44

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................... 1

LEGAL BACKGROUND ........................................................................................... 2

    I.    The Quiet Title Act ............................................................................... 3

        A.    The Quiet Title Act's Waiver of Sovereign Immunity ..................... 3

        B.    The Quiet Title Act's State-Specific Statute of Limitations ............. 4

    II.    The Submerged Lands Act ..................................................................... 5

    III.    The Alaska Statehood Act and the Alaska National Interest Lands Conservation Act .................................................................................... 6

    IV.    The 1988 Amendments to the Submerged Lands Act ................................. 8

    V.    The Canals Act of 1890 ......................................................................... 9

FACTUAL & PROCEDURAL BACKGROUND ............................................................ 11

    I.    The Subject Waters ............................................................................. 11

    II.    State Selection of the Undisputed Lands ............................................... 12

    III.    BLM Determines the Undisputed Lands are Not Navigable and the State of Alaska Receives Title to the Undisputed Lands ........................... 14

    IV.    Alaska Initiates a Lawsuit Concerning the Undisputed Lands ................... 16

LEGAL STANDARD ............................................................................................... 18

ARGUMENT .......................................................................................................... 21

    I.    The Court lacks jurisdiction over the Undisputed Lands because sovereign immunity has not been waived ............................................... 21

    II.    The Quiet Title Act's Statute of Limitations Otherwise Bars Alaska's Claim Regarding the Undisputed Lands ............................................... 26

    III.    The State's Declaratory Judgment Act Claim Must be Dismissed ............. 31

CONCLUSION ....................................................................................................... 35

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

i

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 2 of 44

# TABLE OF AUTHORITIES

Page(s)

**Other Authorities**

*Alaska v. United States*,
201 F.3d 1154 (9th Cir. 2000) ................................................................. 23

*Alaska v. United States*,
662 F. Supp. 455 (D. Alaska 1987) ........................................................ 6, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 20, 22

*Beetus v. United States*,
527 F. Supp. 3d 1075 (D. Alaska 2021) ..................................................... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 20, 22

*Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*,
461 U.S. 273 (1983) ...................................................... 3, 4, 26, 32, 34

*Brown v. GSA*,
425 U.S. 820 (1976) ................................................................................... 34

*City of Reno v. Netflix, Inc.*,
52 F.4th 874 (9th Cir. 2022) ...................................................................... 35

*Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*,
914 F. Supp. 2d 1170 (D. Mont. 2012) ...................................................... 34

*Friends of Panamint Valley v. Kempthorne*,
499 F. Supp. 2d 1165 (E.D. Cal. 2007) ..................................................... 32

*Gen. Atomic Co. v. United Nuclear Corp.*,
655 F.2d 968 (9th Cir.1981) ...................................................................... 19

*Kane Cnty. v. United States*,
772 F.3d 1205 (10th Cir. 2014) .............................................................. 3, 23

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .................................................................. 8, 20

*Lane v. Pena*,
518 U.S. 187 (1996) ................................................................................... 33

*Leisnoi, Inc. v. United States*,
170 F.3d 1188 (9th Cir. 1999) ...................................................... 3, 21, 22, 23

*Leisnoi, Inc. v. United States*,
267 F.3d 1019 (9th Cir. 2001) ...................................................... 21, 23, 24

*McMaster v. United States*,
731 F.3d 881 (9th Cir. 2013) ............................................................... 32, 34

*Mesa Grande Band of Mission Indians v. Salazar*,
657 F. Supp. 2d 1169 (S.D. Cal. 2009) ..................................................... 30

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

ii

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 3 of 44

*Metro. Water Dist. of Salt Lake & Sandy v. SHCH Alaska Trust*,
   452 P.3d 1158 (Utah 2019) ................................................................... 10
*Mills v. United States*,
   742 F.3d 400 (9th Cir. 2014) ........................................................... 3, 22
*Morkal v. Hawks*,
   No. 3:12-cv-00218 RRB, 2015 WL 6159335 (D. Alaska Oct. 19, 2015) .................... 19
*N. Dakota, ex rel. Bd. of Univ. & Sch. Lands v. United States*,
   972 F.2d 235 (1992) ........................................................................... 26
*Owyhee Cnty. v. United States*,
   No. 1:21-cv-00070-CWD, 2022 WL 60627 (D. Idaho Jan. 5, 2022) ................... 23, 32
*PennEast Pipeline Co. v. New Jersey*,
   594 U.S. __, 141 S.Ct. 2244 (2021) ................................................... 24
*PPL Mont., LLC. v. Montana*,
   565 U.S. 576 (2012) ............................................................................. 7
*Rattlesnake Coal. v. EPA*,
   509 F.3d 1095 (9th Cir. 2007) ........................................................... 19
*Robinson v. United States*,
   586 F.3d 683 (9th Cir. 2009) ............................................................. 19
*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ........................................................... 19
*Savage v. Glendale Union High Sch.*,
   343 F.3d 1036 (9th Cir. 2003) ....................................................... 19, 20
*Saving America's Mustangs v. Bureau of Land Mgmt.*,
   No. 3:16-cv-00733, 2017 WL 13171261 (D. Nev. April 13, 2017) ..................... 32
*Schilling v. Rogers*,
   363 U.S. 666 (1960) ........................................................................... 35
*Shawnee Trail Conservancy v. U.S. Dep't of Agriculture*,
   222 F.3d 383 (7th Cir. 2000) ............................................................. 33
*Siddiqui v. United States*,
   359 F.3d 1200 (9th Cir. 2004) ............................................................. 4
*Soriano v. United States*,
   352 U.S. 270 (1957) ............................................................................. 4
*Supermail Cargo, Inc. v. United States*,
   68 F3d 1204 (9th Cir. 1995) ............................................................... 19
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ........................................................................... 20
*The Daniel Ball*,
   77 U.S. 557 (1870) ............................................................................... 7
*Tobar v. United States*,
   639 F.3d 1191 (9th Cir. 2011) ........................................................ 3, 4
*Trs. for Alaska v. State*,
   736 P.2d 324 (Alaska 1987) ................................................................. 6

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

iii

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 4 of 44

*United States v. Nordic Vill., Inc.*,
   503 U.S. 30 (1992) ................................................................................................. 4
*United States v. Skorepa*,
   No. 5:05-cv-750, 2005 WL 3634605 (N.D. Ohio 2005) ............................ 25
*United States v. Van Horn*,
   197 F. 611 (D. Colo. 1912) ............................................................................. 10
*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ...................................................................... 19
*Wilkins v. United States*,
   598 U.S. 152 (2023) ................................................................................... 5, 17
*Worick Land Holdings, LLC v. Scott Cnty. Rural Land Mgmt. Bd., Inc.*,
   No. 5:23-049-DC, 2023 WL 3910246 (E.D. Ky. June 8, 2023) .................... 25

**Statutes**

28 U.S.C. § 2201 ...................................................................................... 17, 31
28 U.S.C. § 2401(a) .................................................................................. 31, 34
28 U.S.C. § 2409a ........................................................................................... 33
28 U.S.C. § 2409a(a) ................................................................................... 3, 21
28 U.S.C. § 2409a(d) ....................................................................................... 18
28 U.S.C. § 2409a(i) ............................................................... 4, 5, 26, 27, 28
28 U.S.C. § 2409a(k) ....................................................................................... 30
28 U.S.C. § 2409a(l) ........................................................................................ 27
43 U.S.C. § 1301 ............................................................................................... 4
43 U.S.C. § 1301(a)(1) ...................................................................................... 5
43 U.S.C. § 1301(a)(1)-(3) ............................................................................... 4
43 U.S.C. § 1301(f) .......................................................................................... 27
43 U.S.C. § 1301(h) ................................................................................... 5, 27
43 U.S.C. § 1311 ............................................................................................... 7
43 U.S.C. § 1631(a) ........................................................................................... 8
43 U.S.C. § 1631(a)(3) ...................................................................................... 9
43 U.S.C. § 1631(b)(1) ...................................................................................... 8
43 U.S.C. § 945 .................................................................................. 10, 25, 30
43 U.S.C. § 945a ......................................................................................... 11, 24
5 U.S.C. § 702 ................................................................................................. 31
5 U.S.C. §§ 701 ............................................................................................... 33
*Alaska Nat'l Interest Lands Conservation Act*,
   Pub. L. No. 96-487, 94 Stat 2371 (1980) .............................................. 6, 28
*Alaska Statehood Act*,
   Pub. L. No. 85-508, § 6(g), 72 Stat. 339, 341 (1958) .............. 6, 7, 12, 28, 29
*Submerged Lands Act*,
   Pub. L. No. 31-65, 67 Stat. 29 (1953) ............................................................ 5

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

iv

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 5 of 44

**Rules**

Federal Rule of Civil Procedure 12(b)(1)........................................................25, 26
Federal Rule of Civil Procedure 12(b)(6)........................................................26

**Regulations**

43 C.F.R. § 4.450-2 ........................................................................31
43 C.F.R. § 4.410........................................................................31
43 C.F.R. § 2650.0-5(l)........................................................................28
43 C.F.R. § 9180.0-2 ........................................................................29
43 C.F.R. §§ 2627.3-.4 ........................................................................29

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

v

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 6 of 44

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|:---:|:---|
| 1 | Declaration of David Mushovic |
| 2 | March 28, 1984 Letter and Memorandum of Agreement |
| 3 | January 24, 1972 State Selection Letter (Selection GS-2141) |
| 4 | 1983 BLM Navigability Report |
| 5 | May 23, 1983 Navigability Determination |
| 6 | August 17, 1983 Navigability Determination |
| 7 | August 17, 1983 Decision and Draft Tentative Approval |
| 8 | September 29, 1983 Final Tentative Approval |
| 9 | September 16, 1983 State Letter |
| 10 | October 18, 1983 Department of Interior Letter |
| 11 | September 30, 2003 BLM Letter |
| 12 | May 15, 2007 T6N, R30W Official Survey |
| 13 | May 9, 2007 T7N, R29W Official Survey |
| 14 | May 29, 2007 T5N, R30W Official Survey |
| 15 | October 15, 2007 Patent |
| 16 | May 29, 2007 T6N, R32 W Official Survey |

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

vi

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 7 of 44

## INTRODUCTION

Federal courts may only adjudicate those claims and grant that relief which they have been empowered to render. In its Second Amended Complaint, the State of Alaska ("State" or "Alaska") renews its claims under the Quiet Title Act and Declaratory Judgment Act. Alaska seeks to quiet title to lands underlying the Chilikadrotna River, Mulchatna River, Turquoise Lake, and Twin Lakes ("Subject Waters"). The Subject Waters lie within fifteen townships located in and around Lake Clark National Park and Preserve in southwestern Alaska.

The United States moves to dismiss Alaska's Declaratory Judgment Act claim in its entirety and Alaska's Quiet Title Act claim as it pertains to lands underlying the Chilikadrotna River in three townships conveyed to Alaska in 2007 (the "Undisputed Lands"). In filing its Second Amended Complaint, Alaska cured its prior pleading deficiency in which it failed to identify a "right, title, or interest claimed by the United States" in the Undisputed Lands, *see* Order 8, ECF No. 44. But Alaska continues to fall short of alleging a *dispute of title* as to the Undisputed Lands. This portion of Alaska's claim seeks to quiet title to land Alaska already owns. While the United States reserved a floating easement over the Undisputed Lands, Alaska alleges nothing to indicate that the easement creates a present dispute. Thus, the United States' sovereign immunity has not been waived with respect to the Undisputed Lands and the Court continues to lack jurisdiction to consider this portion of the State's claim.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

1

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 8 of 44

In the alternative, if the Court were to find it has jurisdiction over the Undisputed Lands, the Court should still dismiss this portion of the State's Quiet Title Act claim on independent grounds. The Quiet Title Act's waiver of sovereign immunity over claims of this nature is limited by a twelve-year statute of limitations. If the Court concludes the State has alleged a dispute sufficient to waive the United States' sovereign immunity and establish jurisdiction over the Undisputed Lands, the State filed suit well beyond twelve years after its claim would have necessarily accrued and thus should be dismissed.

Finally, regardless of whether the Court dismisses the State's Quiet Title Act claim as to the Undisputed Lands, it must dismiss the State's Declaratory Judgment Act claim in its entirety. The Declaratory Judgment Act cannot be employed as an end run around Congressional limitations on the waiver of sovereign immunity and grant relief that is unavailable. Separately, the Declaratory Judgment Act does not waive sovereign immunity or confer subject matter jurisdiction. Thus, if the Court finds it lacks jurisdiction over the Undisputed Lands under the Quiet Title Act, the State's Declaratory Judgment Act claim concerning those lands must be dismissed on that basis as well.

**LEGAL BACKGROUND**

The facts and legal issues at the forefront of Defendant's Renewed Partial Motion to Dismiss are premised on a number of varied federal statutes, including the Quiet Title Act, Alaska Statehood Act, the Alaska National Interest Lands Conservation Act, the Submerged Lands Act, and the Canals Act of 1890.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

2

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 9 of 44

# I.     The Quiet Title Act

The Quiet Title Act provides the "exclusive means by which adverse claimants [may] challenge the United States' title to real property." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273 (1983).  The Quiet Title Act contains both a narrow waiver of sovereign immunity, 28 U.S.C. § 2409a(a), and a state-specific statute of limitations, *id.* at § 2409a(i).

## A.     The Quiet Title Act's Waiver of Sovereign Immunity

As a starting point, suits against the United States are "barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives sovereign immunity." *Mills v. United States*, 742 F.3d 400, 404-405 (9th Cir. 2014); *see Tobar v. United States*, 639 F.3d 1191, 1194 (9th Cir. 2011).

The Quiet Title Act waives the United States' sovereign immunity if two conditions are met:

> The United States may be named as a party defendant in a civil action under this section to adjudicate [1] a *disputed title* to real property [2] in which the United States claims an interest.

28 U.S.C. § 2409a(a) (emphasis added).  "If either condition is absent, the [Quiet Title] Act . . . does not apply and the district court lacks jurisdiction to entertain the action*." Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir. 1999) ("*Leisnoi I*"); *see also Kane Cnty. v. United States*, 772 F.3d 1205, 1210-11 (10th Cir. 2014) ("[F]or a court to have jurisdiction over a QTA claim, the plaintiff must establish that: (1) the United States 'claims an interest' in the property at issue; and (2) title to the property is 'disputed.').

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

3

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 10 of 44

Like all waivers of sovereign immunity, the Quiet Title Act's waiver of sovereign immunity "must be construed strictly in favor" of the United States. *Siddiqui v. United States*, 359 F.3d 1200, 1204 (9th Cir. 2004) (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 34 (1992)). Thus, any limitations or conditions found in the waiver of sovereign immunity "must be strictly observed and exceptions thereto are not to be implied." *Tobar*, 639 F.3d at 1195 (quoting *Soriano v. United States*, 352 U.S. 270, 276-77 (1957)); *see Block*, 461 U.S. at 280.

## B. The Quiet Title Act's State-Specific Statute of Limitations

Section 2409a(i) contains the relevant twelve-year statute of limitations for states to bring an action under the Quiet Title Act. That Section provides:

> Any civil action brought by a State under this section with respect to lands, other than tide or submerged lands, on which the United States . . . has made substantial improvements or substantial investments or on which the United States has conducted substantial activities pursuant to a management plan such as range improvement, timber harvest, tree planting, mineral activities, farming, wildlife habitat improvement, or other similar activities, shall be barred unless the action is commenced within twelve years after the date the State received notice of the Federal claims to the lands.

28 U.S.C. § 2409a(i).

And while § 2409a(i) on its face does not apply in the case of "submerged lands," it is nonetheless relevant here because the Act defines such lands narrowly, to the exclusion of the Undisputed Lands. The Quiet Title Act defines "tide or submerged lands" as "'lands beneath navigable waters' as defined in section 2 of the Submerged Lands Act (43 U.S.C. § 1301)." *Id.* at § 2409a(l).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
4

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 11 of 44

The Submerged Lands Act in turn defines "lands beneath navigable waters" to include certain waters, 43 U.S.C. § 1301(a)(1)-(3), but importantly, it *excludes* from the definition the beds of streams that were surveyed, not meandered, and then patented. Specifically, the term "lands beneath navigable waters" does not include:

> the beds of streams in lands now or heretofore constituting a part of the public lands of the United States if [1] such streams were not meandered in connection with the public survey of such lands under the laws of the United States and [2] if the title to the beds of such streams was lawfully patented or conveyed by the United States or any State to any person[.]

*Id.* at § 1301(f).[1]

Thus, when a state receives title to lands that contain streambeds, and those streambeds are not meandered in the public survey, the streambeds are *not* "tide or submerged lands," but merely "lands" for 28 U.S.C. § 2409a(i) purposes. In that case, the "tide or submerged lands" exception to the Quiet Title Act's statute of limitations does not apply. If the state then brings suit after the twelve-year statute of limitations has run, the claim is barred by the United States' sovereign immunity. *See Wilkins v. United States*, 598 U.S. 152, 166 (2023).

## II.     The Submerged Lands Act

More than simply serving to supply the definitions noted above, the Submerged Lands Act, Pub. L. No. 31-65, 67 Stat. 29 (1953), sought to "confirm and establish" state ownership of lands beneath navigable waters at the time of statehood in harmony with the equal footing doctrine. *Id.* In doing so, the Submerged Lands Act defined "lands beneath

---

[1] The term "person" in § 1301(f) is defined to include a State. 43 U.S.C. § 1301(h).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

5

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 12 of 44

navigable waters" as including certain tidal waters, reclaimed lands, and importantly, lands "covered by nontidal waters that were navigable under the laws of the United States at the time such State became a member of the Union, . . . up to the ordinary high water mark . . . ." 43 U.S.C. § 1301(a)(1).

## III. The Alaska Statehood Act and the Alaska National Interest Lands Conservation Act

Shortly after passage of the Submerged Lands Act, in 1958 Congress passed the Alaska Statehood Act, Pub. L. No. 85-508, § 6(a)-(b), 72 Stat. 339, 340-43 (1958) ("Statehood Act"). The Statehood Act authorized Alaska to select nearly 103.5 million acres of land to be conveyed through a general grant from the United States. *Id.*; *see Trs. for Alaska v. State*, 736 P.2d 324, 336 (Alaska 1987). Ordinarily, when lands selected by Alaska under Section 6 of the Statehood Act are approved, they are surveyed (unless a prior survey exists), and the Secretary of the Interior then patents the land to the State. Pub. L. No. 85-508, § 6(g), 72 Stat. at 342. This conveyance process includes the right to select "beds of non-navigable waterbodies." *Alaska v. United States*, 662 F. Supp. 455, 457 (D. Alaska 1987). In the ensuing decades, Alaska selected millions of acres to be conveyed through this conveyance process.

In 1980, Congress passed the Alaska National Interest Lands Conservation Act ("ANILCA"). Pub. L. No. 96-487, 94 Stat 2371 (1980) (codified as amended at 16 U.S.C. §§ 3101-3233). Among other things, ANILCA amended several aspects of the Statehood Act's conveyance process. In particular, ANILCA declared that "all right, title, and interest of the United States in and to such lands is deemed to have vested in the State of

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

6

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 13 of 44

Alaska as of the date of tentative approval" of the selection. *Id.* at § 906(c)(1); *see also id.* at § 906(c)(1), (4) (applying, with limited exceptions, to all prior and future tentative approvals). Lands that are the subject of a tentative approval, "[u]pon approval of a land survey by the Secretary [of the Department of the Interior]" are then "patented to the State of Alaska." *Id.* at § 906(c)(2). This administrative framework also applied retroactively to State selections made prior to ANILCA's enactment. *Id.* at § 906(d).

The Statehood Act confirmed the application of the Submerged Lands Act of 1953 to the State of Alaska. Pub. L. No. 85-508, § 6, 72 Stat. at 340-43; 43 U.S.C. § 1311. While the Statehood Act granted Alaska the right to select the beds of *nonnavigable* waters, the Submerged Lands Act of 1953 and equal footing doctrine gave Alaska, like all other states, title to the beds of inland waters within its borders that were *navigable* at statehood. *See PPL Mont., LLC. v. Montana*, 565 U.S. 576, 589-91 (2012). Rivers are navigable for title purposes "when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water." *Id.* at 592 (quoting *The Daniel Ball*, 77 U.S. 557, 563 (1870)).

Ascertaining the navigability of waterways is a part of the Statehood Act conveyance process because title to the beds of navigable waterbodies passed to the State at the time of statehood and are not chargeable against the State's nearly 103.5 million acreage entitlement under the Statehood Act. *Alaska*, 662 F. Supp. at 457. This navigability inquiry is a time- and resource-intensive process, particularly in Alaska

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
7

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 14 of 44

given the limited historical accounts of remote waterbodies and the narrow window of opportunity for field work necessary to make a determination that is in accordance with the Supreme Court's test for navigability for title purposes.

## IV.    The 1988 Amendments to the Submerged Lands Act

The need to make navigability determinations for waterbodies within Alaska's selections slowed the progress of the conveyance program for a time, but the conveyance program was changed through an agreement in 1984 between the State and the Department of the Interior. Ex. 2.[2]  In 1988, Congress confirmed that agreement through amendments to the Submerged Lands Act.   Among other things, the 1988 amendments adopted BLM's 1973 Survey Manual and its concept of "meandering."  43 U.S.C. § 1631(a).  In particular, the amendments declared that any lake, river, or stream that was "meanderable" and conveyed to the State, "shall vest in and shall not be charged against the acreage entitlement of . . . the State."  43 U.S.C. § 1631(b)(1).

Meandering refers to a surveyor's tracing of the "the sinuosities of the banks of the stream or other body of water." 1973 Survey Manual, § 3-115, at 93.[3]  BLM surveyors

---

[2] As discussed, *infra note* 6, when challenging the factual basis for subject matter jurisdiction in a Rule 12(b)(1) motion to dismiss, a defendant may present factual evidence demonstrating the court's lack of jurisdiction.  *E.g.*, *Beetus v. United States*, 527 F. Supp. 3d 1075, 1079-80 (D. Alaska 2021).  In considering a Rule 12(b)(6) motion to dismiss, the court may also consider documents outside the complaint pursuant to the judicial notice and incorporation by reference doctrines.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

[3] The United States Department of the Interior, BLM, *Manual of Instructions for the Survey of the Public Lands of the United States* (1973): https://www.ntc.blm.gov/krc/system/files/legacy/uploads/14408/Manual_of_instructions_1973.pdf ("1973 Survey Manual").

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

8

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 15 of 44

meander rivers or creeks which average greater than three chains in width (198 feet) and lakes larger than fifty acres. *Id.* at § 3-120, at 96, § 3-121 at 97. But a determination of "meanderability" does not equate to a finding of navigability. Rather, meandering a waterbody segregates it from the public lands. 1973 Survey Manual, § 3-115. If a waterbody is part of a State selection, and that waterbody meets the criteria for being meanderable, BLM does not need to evaluate whether it is navigable for purposes of surveying or charging acreage to the State. 43 U.S.C. § 1631(a)(3). Instead, the lands beneath the meanderable waterbody lying between State-selected uplands and the median line or midpoint of the meanderable waterbody (along with any interest of the United States) convey to the State as riparian owner and are excluded from the acreage charged to the State on that basis, rather than by virtue of being navigable. *Id.* § 1631(b)(1).[4]

The 1988 amendments' adoption of "meanderability" reduced the extent to which BLM had to conduct expensive, burdensome, and time-consuming navigability inquiries. Instead, BLM could focus its limited resources on navigability inquiries for waterbodies that were not meanderable, that is, rivers, creeks, and streams that were less than 198 feet in width and lakes that were less than 50 acres.

## V.     The Canals Act of 1890

As part of conveying lands to the State of Alaska, and indeed in nearly every conveyance since 1890, the United States has reserved an easement for the construction

---

[4] For lands under waterways that are *not* meandered, because this land is not segregated from the public lands, it is conveyed and charged to the State (or native corporation) as a part of the public lands sought in the application.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

9

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 16 of 44

of ditches and canals.  Congress passed the Canals Act of 1890 to ensure irrigation and development as the United States continued to expand westward.  Ch. 837, Sec. 1, 26 Stat. 391 (1890) (codified as amended at 43 U.S.C. § 945); *see also United States v. Van Horn*, 197 F. 611, 615 (D. Colo. 1912) (observing that in the Canals Act of 1890 and similar acts, "the Government unmistakably declared a purpose to reclaim its arid lands by conducting water to and across them").  The act provides that for all patents issued after August 30, 1890 west of the one hundredth meridian, "it shall be expressed that there is reserved from the lands in said patent described a right of way thereon for ditches or canals constructed by the authority of the United States."  43 U.S.C. § 945.  "The statute actually applies, with few exceptions, to *all* public lands west of the 100th meridian . . . ."  S. Rep. No. 88-1507, at 2 (1964) (Comm. Rep.) (emphasis added).  Federal management of the rights-of-way is conducted by the Department of the Interior's Bureau of Reclamation through the Reclamation Act of 1902, Ch. 1093, 32 Stat 390, (codified as amended at 43 U.S.C. §§ 371-616yyyy).

The reservation found within the act "is a floating type easement, never located precisely until a canal is actually placed upon the land."  S. Rep. No. 88-1507, at 2. Such easements "are flexible in scope—being as extensive as needed to fulfill the purposes of the easement—while imposing as little burden as reasonably possible on the owner of the property over which the easement runs."  *Metro. Water Dist. of Salt Lake & Sandy v. SHCH Alaska Trust*, 452 P.3d 1158, 1172 (Utah 2019).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
10

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 17 of 44

In the event the United States were to construct such a ditch or canal, the United States would be required to conduct all environmental reviews and analyses in accordance with applicable laws, and provide compensation, including severance damages, to the private landowner affected. *See* 43 U.S.C. § 945a.

Nowhere in the Canals Act of 1890 did Congress authorize a blanket waiver of sovereign immunity simply based on the existence of this floating easement in nearly every patent west of the 100th meridian.

## FACTUAL & PROCEDURAL BACKGROUND

### I. The Subject Waters

The Subject Waters originate in Lake Clark National Park and Preserve and flow westward beyond the Park's boundary. The Mulchatna River's headwaters are in Turquoise Lake, and it flows for approximately 217 miles before emptying into Nushagak Bay in southwest Alaska. *See* Sec. Am. Compl. ¶ 17, ECF No. 47.

Directly south is the Chilikadrotna River, which flows from the Twin Lakes for approximately sixty-two miles before converging with the Mulchatna. *See* Sec. Am. Compl. ¶ 15. The entirety of both Turquoise Lake and Twin Lakes, and a small portion of the Mulchatna and Chilikadrotna, lie within the Lake Clark National Park and Preserve boundary. In Parts I and II of its Argument, the United States moves to dismiss Alaska's claims only as to the Undisputed Lands, which consist of lands underlying the portions of the Chilikadrotna that flow outside Lake Clark National Park and Preserve and through

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

11

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 18 of 44

three townships owned by the State of Alaska. Part III concerns all of the "Subject Submerged Lands" as reflected in Alaska's claim for a declaratory judgment.

## II. State Selection of the Undisputed Lands

As noted above, Section 6(b) of the Statehood Act authorized Alaska, subject to certain restrictions, to select acreage from the public lands of the United States to become state-owned lands of Alaska. Pub. L. No. 85–508, 72 Stat. 339. After the passage of the Statehood Act but prior to the passage of ANILCA, the State in 1972 selected several townships. Ex. 3. The State's 1972 selection included three townships containing sections of the Subject Waters and which are identified in the Second Amended Complaint as (1) Township 5 N. Range 30 W.; (2) Township 6 N. Range 30 W.; and (3) Township 7 N. Range 29 W. *Id.*; Sec. Am. Compl. ¶ 15. These three townships contain approximately fifteen combined river miles of the Chilikadrotna, reflecting a significant portion of the river miles at issue in this case overall, and constitute the Undisputed Lands that are the subject of this Motion.

Figure A below shows the three townships owned by Alaska that are the subject of Defendant's Renewed Partial Motion to Dismiss (Undisputed Lands); three other townships that Alaska had included in its original Complaint but later voluntarily dismissed (Dismissed Lands), discussed *infra* p. 14; and the remaining twelve townships that are in dispute in this case (Disputed Lands).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

12

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 19 of 44

**Figure A**



*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

13

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 20 of 44

**III.    BLM Determines the Undisputed Lands are Not Navigable and the State of Alaska Receives Title to the Undisputed Lands**

Following the State's 1972 selection of certain townships, BLM undertook an investigation to determine whether waterways within those townships—including the Mulchatna and Chilikadrotna—were navigable.  On or about May 13, 1983, BLM issued a navigability report recommending, *inter alia*, that the Chilikadrotna from the mouth of Ptarmigan Creek up to and including Twin Lakes is nonnavigable.  Ex. 4.  As part of this report, BLM reviewed various reference materials on the rivers and their use, and performed interviews of individuals with knowledge of the area.  *Id.* at 2-5.

On May 23, 1983 and August 17, 1983, BLM staff recommended this analysis be incorporated into the conveyance decisions covering the relevant portions of the Mulchatna and Chilikadrotna rivers.  Exs. 5-6.  These recommendations affirmed that the Chilikadrotna is nonnavigable within the Undisputed Lands.

In conjunction with BLM staff's nonnavigability recommendations, on or about August 17, 1983, the Department of the Interior issued a Decision and Draft Tentative Approval to the State.  Ex. 7.  The Draft Tentative Approval declared that all the lands within the three townships containing the Undisputed Lands were "considered proper for acquisition by the State," and "tentatively approved."  *Id.* at 5.  The Draft Tentative Approval confirmed that "all right, title, and interest of the United States in and to the lands described above is deemed to have vested in the State of Alaska pursuant to Sec. 906(d)(1) of the [ANILCA]."  *Id.* at 7.  The Draft Tentative Approval also stated the approximate acreage being conveyed to the State.  *Id.* at 5-6.  Finally, the Decision

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

14

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 21 of 44

informed the State of Alaska that "[a]n appeal from this decision may be taken to the Board of Land Appeals." *Id.* at 3.

On September 29, 1983, the Department of the Interior issued a Final Tentative Approval, affirming the Decision and Draft Tentative Approval and affirming that title to the lands therein, including the Undisputed Lands, passed to the State of Alaska. Ex. 8 at 3-4. The State sent a letter requesting that the Department of the Interior reverse its Decision and its determination that the Chilikadrotna is nonnavigable within the relevant townships. Ex. 9. But Interior declined that request, Ex. 10, and the State declined to appeal BLM's decision.

By letter dated September 30, 2003, BLM informed the State that certain State-selected and tentatively approved lands—including the Undisputed Lands—were scheduled for survey in the 2004 field season. Ex. 11. BLM's letter again reiterated that no navigable waters existed within the townships containing the Undisputed Lands. BLM then proceeded to survey the townships and officially filed the surveys in May 2007. Exs. 12-14.

In conducting the surveys, BLM meandered the Chilikadrotna within the lower three townships that the State dismissed from its original Complaint. As a result of meandering this section of the Chilikadrotna, the acreage of the Chilikadrotna within the Dismissed Lands was not charged against the State's entitlement under the Statehood Act. Consistent with the 1988 amendments to the Submerged Lands Act, BLM

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
15

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 22 of 44

nonetheless conveyed the submerged lands to the State because the State was the riparian owner.

BLM did not, however, meander the Chilikadrotna within the townships containing the Undisputed Lands because it was not of sufficient size to be meandered (it averaged less than 198 feet in width). *See* Exs. 12 at 9, 13 at 11, 14 at 9. Thus, the Undisputed Lands were not segregated from the public lands and were instead included within the public lands selected by the State. *See* 1973 Survey Manual, § 3-115. The acreage of the Chilikadrotna that constitutes the Undisputed Lands was therefore charged against the State's entitlement upon patent. The Department of the Interior issued a patent to Alaska on October 15, 2007, for the relevant townships. That patent necessarily included the Undisputed Lands. Ex. 15.

Unlike the submerged lands within the remaining twelve townships which are owned and managed by the United States, the 2007 Patent explicitly conveyed the bed of the Chilikadrotna within these three townships to the State. Alaska, as the undisputed owner, is thus free to manage and conduct all manner of activities on the Undisputed Lands as it sees fit. Alaska has not alleged that it has been unable to use, manage, or conduct any activities on the Undisputed Lands.

## IV. Alaska Initiates a Lawsuit Concerning the Undisputed Lands.

On October 25, 2021, Secretary of the Interior, Deb Haaland, received notice from the State of the Alaska regarding its intent to sue under the Quiet Title Act. Compl. ¶ 6, ECF No. 1. The State filed its Complaint on April 26, 2022. ECF No. 1. Initially, the

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
16

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 23 of 44

State alleged there was an ownership dispute, and thus needed to quiet title, to submerged

lands within thirteen townships containing the Chilikadrotna and Twin Lakes, and five

townships containing the upper Mulchatna and Turquoise Lake.  Compl. ¶¶ 13-16.  The

State alleged for all portions of the Subject Waters that BLM's 1983 navigability analysis

created a dispute of title.  Compl. ¶¶ 24-25.  In its Answer, the United States agreed that

the State owns all the lands under the Chilikadrotna in the six townships BLM conveyed

to it in 2007.  Ans. ¶ 10, ECF No. 11.

The State then filed an Amended Complaint. ECF No. 17.   The State removed

from its challenge the three townships in which BLM meandered the Chilikadrotna in the

2007 official surveys.[5]  *Compare* Compl. ¶ 14 *with* Am. Compl. ¶ 15.  The State also

added a separate claim pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

Am. Compl. ¶¶ 48-53.

On December 9, 2022, the United States filed its Motion to Dismiss the Amended

Complaint for lack of jurisdiction.  ECF No. 20.  Supplemental briefing regarding the

effect of the Supreme Court's decision in *Wilkins v. United States*, 598 U.S. 152 (2023),

and oral argument followed.  Shortly thereafter, the Court granted the United States'

Motion to Dismiss.  Order, ECF No. 44.  The Court agreed that the State had failed to

"identify 'the right, title, or interest claimed by the United States,'" necessary to satisfy

---

[5] Presumably, the State removed these three townships (the "Dismissed Lands" noted in
Figure A, *supra* p. 13) because the acreage of the meandered waters was excluded from
the calculation of the acreage conveyed by the patent in 2007, in accord with the 1988
amendments to the Submerged Lands Act.  Notably, the Dismissed Lands are also subject
to the reservation for ditches and canals.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
17

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 24 of 44

the Quiet Title Act's heightened pleading standard and impart the Court with jurisdiction over the Undisputed Lands. Order 8 (quoting 28 U.S.C. § 2409a(d)). The Court granted the State leave to amend to attempt to correct this deficiency.

In its Second Amended Complaint, the State continues to maintain that this Court has jurisdiction under the Quiet Title Act to consider the State's claims regarding the submerged lands underlying all fifteen townships containing Twin Lakes, Turquoise Lake, portions of the Chilikadrotna, and portions of the Mulchatna. Sec. Am. Compl. ¶¶ 5, 14-17. With respect to the Undisputed Lands in particular, the State alleges that "the United States purported to reserve a real property interest, namely a right-of-way for the construction of ditches or canals on submerged lands underlaying the Chilikadrotna River." *Id.* at ¶ 48. The State then alleges that this reserved easement "casts a cloud on the rights and title of the State to the [Undisputed Lands]," *id.* at ¶ 49, and "is in dispute between the parties." *Id.* at ¶ 50. The Second Amended Complaint contains no other factual allegations regarding this purported dispute.

Among other requests in the Second Amended Complaint, the State asks the Court to declare that the acreage of the Undisputed Lands are not chargeable against the State's Statehood Act land entitlement. *Id.* at ¶ 70.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a claim for lack of subject matter jurisdiction on sovereign immunity grounds. *E.g.*, *Morkal v.*

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
18

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 25 of 44

*Hawks*, No. 3:12-cv-00218 RRB, 2015 WL 6159335, at *2 (D. Alaska Oct. 19, 2015); *Robinson v. United States*, 586 F.3d 683 (9th Cir. 2009).

When considering a Rule 12(b)(1) motion, the court does not assume to have jurisdiction. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir.1981). Rather, "[o]nce challenged, the party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson*, 586 F.3d at 685 (quoting *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007)).

A Rule 12(b)(1) jurisdictional attack may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)). When determining whether a court has subject matter jurisdiction, "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.* (citing *White*, 227 F.3d at 1242). Rather, once the moving party has presented evidence demonstrating a lack of subject matter jurisdiction, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage*, 343 F.3d at 1039 n.2).

Whether a claim is barred by a nonjurisdictional statute of limitations is appropriately considered not through Rule 12(b)(1), but through a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Supermail Cargo, Inc. v. United States*, 68 F3d

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

19

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 26 of 44

1204, 1206 n.2 (9th Cir. 1995). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts are generally limited to a plaintiff's well-pleaded factual allegations when assessing the sufficiency of a complaint under Rule 12(b)(6). But courts must also consider additional materials outside the pleadings that are properly subject to judicial notice under Federal Rule of Evidence 201 or the incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).[6]

---

[6] The Court may consider each of Defendant's exhibits in evaluating its motion under Rule 12(b)(1) as they are evidence in support of Defendant's argument the Court lacks subject matter jurisdiction to the Undisputed Lands. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The Court may also consider each of the exhibits in considering Defendant's motion under Rule 12(b)(6) because those exhibits are matters of public record and include agency records, letters, and reports that are subject to judicial notice. *See Khoja*, 899 F.3d at 1000-01. The Court may also incorporate by reference Defendant's Exhibits. Defendant's Exhibits 14 and 19 are explicitly referenced and relied on in Alaska's Second Amended Complaint. Sec. Am. Compl. ¶¶ 25, 45. Moreover, Alaska's claims necessarily depend on its acquisition of certain townships through the Statehood Act conveyance process. Defendant's exhibits evidence each of the steps in that mandated process including the State selection, related correspondence, navigability determinations, tentative approvals, official surveys, and the issued patent and therefore form the necessary foundation of Alaska's claims. *See Khoja*, 899 F.3d at 1002 (recognizing that under the incorporation by reference doctrine, a court may accept documents in evaluating a motion to dismiss under 12(b)(6) even if not described in the complaint if the claim necessarily depended on them).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

20

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 27 of 44

## ARGUMENT

## I. The Court lacks jurisdiction over the Undisputed Lands because sovereign immunity has not been waived

Under the Quiet Title Act, the United States waives its sovereign immunity only to "adjudicate a disputed title to real property in which the United States claims an interest." 28 U.S.C. § 2409a(a). Thus, for the United States to waive sovereign immunity and a federal court to exercise jurisdiction, a plaintiff must establish that two requirements are met. *See* 28 U.S.C. § 2409a(a). First, "the United States must claim an interest in the property at issue." *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1022 (9th Cir. 2001) ("*Leisnoi II*"). Second, "there must be a disputed title to real property." *Id.* If either requirement is not satisfied, the plaintiff's claim must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

With the filing of Alaska's Second Amended Complaint, the United States concedes that Alaska has satisfied the first requirement. Alaska has alleged that "the United States claims an interest" in real property. 28 U.S.C. § 2409a(a). With respect to the townships containing the Undisputed Lands, the United States reserved a floating easement in the 2007 patent.[7] Sec. Am. Compl. ¶ 48; *see Leisnoi I*, 170 F.3d at 1191 (concluding that reserved easements constitute an interest in real property); *see also Leisnoi II*, 267 F.3d at 1024 ("[T]he first requirement for initial jurisdiction may be met

---

[7] The Court may incorporate by reference the 2007 patent because it forms the basis of the legal interest in real property that is at the core of Alaska's claims.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

21

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 28 of 44

by an interest of the United States in the property in issue even if that interest is undisputed[.]").

Alaska has failed, however, to satisfy the second requirement: factual allegations showing a *disputed* title to real property. Alaska alleges, without elaboration, that the United States' reservation of a floating easement "is adverse to the title of the State and is in dispute between the parties." Sec. Am. Compl. ¶ 50. But while this allegation tracks the second requirement in *Leisnoi II*, the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

The Ninth Circuit has held that "[f]or a title to be disputed for purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title." *Mills v. United States*, 742 F.3d 400, 405 (9th Cir. 2014); *id.* (noting that even an "isolated allegation" of conflict is insufficient to demonstrate a dispute). Thus, where the United States claims a non-possessory property right, but neither the United States nor a third party purportedly acting on behalf of the United States has exercised that right in conflict with another's property rights, a dispute will not lie. Consistent with this standard and the circumstances of this case, the Ninth Circuit in *Leisnoi I* concluded "there was no colorable conflict," 170 F.3d at 1188, between the United States and the plaintiff where the government issued patents conveying the property, and "claimed no interest in the property, except for the interests (such as

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
22

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 29 of 44

easements) expressly reserved in the patents . . . ."  *Id*. at 1191; c*f. Kane Cnty.*, 772 F.3d

at 1212-13 (finding no dispute of title where agency management plan did not declare

right-of-way closed, plan did not adjudicate rights-of-way, and agency took no action to

limit travel on right-of-way); *Owyhee Cnty. v. United States*, No. 1:21-cv-00070-CWD,

2022 WL 60627, at *6 (D. Idaho Jan. 5, 2022) (finding no dispute of title where plaintiffs

did not allege the United States would "allow or restrict . . . travel, or manage, or

otherwise act in a manner indicative of ownership over the rights-of-way at issue in

conflict with Plaintiffs' . . . claims").  Only when an intervening Alaska Supreme Court

ruling permitted a third party to assert the property must be returned to the United States

in its entirety, legitimizing the concerns of plaintiff's prospective buyer, did the Ninth

Circuit in *Leisnoi II* conclude "there was a continuing dispute between the asserted

interests of [the plaintiff] and the United States."  267 F.3d at 1023.[8]

Unlike in those cases, Alaska here generically alleges that the United States'

reserved easement for the construction of ditches and canals "diminishes the State's real

property interest and improperly casts a cloud on the rights and title of the State," Sec.

Am. Compl. ¶ 49.  But Alaska fails to allege any facts explaining *how* its property in the

submerged lands is diminished, or how the alleged "cloud" on its title amounts to a

---

[8] The Undisputed Lands and the above cases involving non-possessory property rights
contrast sharply with the remaining twelve townships constituting the Disputed Lands.
For those townships, the United States concedes there is a dispute to title based on the
competing claims of fee ownership.  *See, e.g., Alaska v. United States*, 201 F.3d 1154,
1159 (9th Cir. 2000) (finding a disputed title where conflicting assertions of title
allegedly "impede[d] [Alaska's] land and water resource management and its ability to
provide public information.").

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
23

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 30 of 44

"dispute."  Like in *Leisnoi I*, the United States has not exercised its property right in a way that causes any conflict with the State's property rights as required in cases such as *Owyhee County* and *Mills*.  For example, there is no allegation that the United States is seeking to construct, or will ever construct, a ditch or canal on the Undisputed Lands that would infringe on Alaska's property interests.  Nor is there any allegation that Alaska has been prevented by the reserved easement from taking any affirmative steps of its own to use, manage, or dispose of the Undisputed Lands.  *See, e.g.*, *Leisnoi II*, 267 F.3d at 1021.

Perhaps most significantly, the reservation in question does not itself empower the United States to construct a ditch or canal, but instead allows the United States to construct a ditch or canal in exchange for providing just compensation to the underlying landowner.  43 U.S.C. § 945a ("Notwithstanding the existence of any reservation of right-of-way to the United States for canals under section 945 of this title, or any State statute, the Secretary of the Interior shall pay just compensation, including severance damages, to the owners of private land utilized for ditches or canals in connection with any reclamation project . . . .").  In this way, the reserved easement does little more than memorialize the United States' inherent eminent domain authority, albeit by allowing the United States to forego some of the judicial and procedural formalities more typical of eminent domain proceedings.  *See, e.g.*, *PennEast Pipeline Co. v. New Jersey*, 594 U.S. __, 141 S.Ct. 2244, 2251 (2021).  This unexercised right does not create any present dispute of title.  There is no indication under these circumstances that Congress, in passing the Canals Act of 1890 and the QTA, intended to automatically confer a waiver

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

24

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 31 of 44

of sovereign immunity for any dispute concerning any patent issued "under any of the land laws of the United States," 43 U.S.C. § 945, simply because the patent contained a legally required reserved easement.

In sum, the Undisputed Lands do not present a case in which the United States has asserted its property right in conflict with the State's ownership interest, or in any way impeded the State's use or management of its property. Instead, Alaska seeks to use the Quiet Title Act as a vehicle for challenging *how* it received its ownership interest and clawing back additional acreage that it may then select elsewhere under the Statehood Act. *See* Sec. Am. Compl. ¶ 70.[9] But parties are prohibited from using the Quiet Title Act to rewrite their original conveyances. *See, e.g.*, *Worick Land Holdings, LLC v. Scott Cnty. Rural Land Mgmt. Bd., Inc.*, No. 5:23-049-DC, 2023 WL 3910246, at *2 (E.D. Ky. June 8, 2023) (quoting *United States v. Skorepa*, No. 5:05-cv-750, 2005 WL 3634605, at *6 (N.D. Ohio 2005)) ("The Act is intended to 'settle actual disputes about who owns what land. It is not a statute which permits a court to reform deeds.'"). Because Alaska owns the Undisputed Lands, and because it has failed to allege how the existence of the United States' reserved easement creates any dispute as to its ownership, or any impediment on its use and enjoyment of the subject land, Alaska has failed to satisfy the

---

[9] If there were any doubt, the State's actual intent is made more obvious by the State's choice to dismiss its Quiet Title Act claims in the Dismissed Lands. The bed of the Chilikadrotna in those townships is also granted by patent and is therefore almost certainly subject to the same easement that the State asserts is the source of the dispute for the Undisputed Lands. The only difference is the State was not charged for the acreage of the riverbed in those townships when the Dismissed Lands were conveyed.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

25

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 32 of 44

second *Leisnoi II* requirement and its claim as to the Undisputed Lands should be dismissed pursuant to Rule 12(b)(1).

## II.  The Quiet Title Act's Statute of Limitations Otherwise Bars Alaska's Claim Regarding the Undisputed Lands

Even if the Court determines the mere existence of a reserved easement satisfies the Quiet Title Act's dispute requirement and is thus sufficient to waive the United States's sovereign immunity and confer jurisdiction, Alaska's claims as to the Undisputed Lands are necessarily barred under Rule 12(b)(6) by the Quiet Title Act's twelve-year statute of limitations.

"[W]hen Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." *Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983).  "When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Id.*  Accordingly, courts "must be careful not to interpret [statutes of limitations] in a manner that would extend the waiver beyond that which Congress intended." *Id.* (internal quotation and citation omitted).

In 1986, Congress amended the Quiet Title Act, "exempting states, for certain purposes, from the statute of limitations of the Act." *N. Dakota, ex rel. Bd. of Univ. & Sch. Lands v. United States*, 972 F.2d 235, 237 (1992).  But in passing § 2409a(i), Congress carefully chose to retain the Act's statute of limitations as it applied to certain claims, such as Alaska's claims regarding the Undisputed Lands at issue here.  28 U.S.C.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

26

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 33 of 44

§ 2409a(i); *see* H.R. Rep. No. 99-924 (1986) (eliminating initial proposal to exempt states entirely from the Quiet Title Act's statute of limitations and instead inserting the present statutory language).  Section 2409a(i) applies to all "lands, other than tide or submerged lands."  28 U.S.C. § 2409a(i)*.* But no "submerged lands" within the meaning of that provision are implicated here because the Quiet Title Act does not regard as "submerged lands" those lands that were surveyed, not meandered, and conveyed out of federal ownership. *Compare* 28 U.S.C. § 2409a(l) ("For purposes of this section, the term 'tide or submerged lands' means 'lands beneath navigable waters' as defined in section 2 of the Submerged Lands Act (43 U.S.C. 1301)"); *with* 43 U.S.C. § 1301(f) ("The term 'lands beneath navigable waters' does not include the beds of streams . . . if such streams were not meandered in connection with the public survey of such lands . . . and if the title to the beds of such streams was lawfully patented or conveyed by the United States or any State to any person)"); *see also* 43 U.S.C. § 1301(h) ("The term 'person' includes . . . a State").

Thus, a State claim is time-barred if five elements are met: (1) the claim involves land that has been subject to substantial improvements, substantial investments, or substantial activities, 28 U.S.C. § 2409a(i); (2) the land was not meandered during the public survey, 43 U.S.C. § 1301(f); (3) and was then lawfully patented, *id.*; (4) by the United States to any person, including any State, *id.*; 43 U.S.C. § 1301(h); and (5) the claim is not brought within 12 years of the State having received notice of the Federal claim to the lands, 28 U.S.C. § 2409a(i).  Each of these five elements are satisfied here.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

27

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 34 of 44

First, the Undisputed Lands were subject to substantial investments and activities. The Department's 1983 navigability report, 1983 tentative approval, 2007 survey, and 2007 patent all constituted significant investments and activities. 28 U.S.C. § 2409a(i). The field surveys alone required BLM surveyors to use helicopters to access remote parcels in Alaska, monument the survey, and cover more than 60,000 acres for the Undisputed Lands. Exs. 12-14. The field survey process is time and labor intensive. *See generally* 1973 Survey Manual. BLM currently spends over $20 million annually on the various Alaska land conveyance activities (adjudications, surveys, patent issuance, etc.).[10] All of these activities were conducted according to BLM's Alaska Conveyance and Lands Program.[11] This is in stark contrast to lands where either the land had already been surveyed for other purposes, or where the conveyance can occur without a survey (for instance via protraction diagram[12]). In both those instances, the land may be conveyed without the need for substantial investment or activities for conveyance survey and related investigation. *See* Alaska Statehood Act, Pub. L. No. 85-508, § 6(g), 72 Stat. 339, 342 (1958) (providing for State selection of both lands that are "unsurveyed at the time of their selection" and lands that are "surveyed at the time of their selection"); ANILCA, Pub. L. No. 96-487, §§ 906(c)(3), 906(d)(5), 906(h)(4), 909, 94 Stat. 2371, 2438-441

---

[10]The United States Department of the Interior, BLM, *Budget Justifications and Performance Information Fiscal Year 2023* at V-103 to 104, https://www.doi.gov/sites/doi.gov/files/fy2023-blm-greenbook.pdf.

[11] *Id*.

[12] A "protraction diagram" is the approved diagram of the BLM mathematical plan for extending the public land surveys. 43 C.F.R. § 2650.0-5(l).

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

28

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 35 of 44

(1980) (recognizing in various instances that patents may be based on protraction diagrams in lieu of field surveys); 43 C.F.R. § 9180.0-2 (providing the areas of Alaska which were generally surveyed without a State application pending).

Second, as the 2007 surveys show, the Chilikadrotna within the Undisputed Lands was not meandered. *See* Exs. 12 at 9, 13 at 11, 14 at 9. As can be seen from those surveys, only the lakes that were meandered are shown on the survey plat. Exs. 12 at 2, 14 at 2.[13]

The third and fourth elements necessary for application of the Quiet Title Act's statute of limitations are also easily met. The United States first conveyed title for the Undisputed Lands to the State via Tentative Approval in 1983, conducted the official survey, and then patented those lands to the State in 2007. Exs. 8, 12-15. Thus, by following all of the elements required by statute and regulation, *see* Alaska Statehood Act, Pub. L. No. 85-508, § 6(g), 72 Stat. 339, 341 (1958); 43 C.F.R. §§ 2627.3-.4, the United States "lawfully patented" the Undisputed Lands to the State.

Fifth, and finally, Alaska failed to bring its present action within twelve years of receiving notice of the federal reservation of easement. The Quiet Title Act directs that notice for purposes of State quiet title actions shall be "(1) by public communications

---

[13] This is in contrast to the lower townships (i.e. Dismissed Lands), which the State removed from its original Complaint. There the Chilkadrotna is visually represented on the survey plat because it *was* meandered. *See, e.g.*, Ex. 16 at 2, 10-23. Pursuant to the 1984 Agreement and 1988 amendments to the Submerged Lands Act, because those lands *were* meandered, the United States did not count the acreage of those submerged lands against the State's acreage allotment even though no navigability determination was made.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

29

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 36 of 44

with respect to the claimed lands which are sufficiently specific as to be reasonably calculated to put the claimant on notice of the Federal claims to the lands, or (2) by the use, occupancy, or improvement of the claimed lands which . . . is open and notorious." 28 U.S.C. § 2409a(k).

Alaska has premised its claims on the mere existence of a reserved easement on lands that it owns. The Canals Act requiring the reserved easement in this case preceded Alaska Statehood by nearly 70 years. Alaska first received actual notice of the United States' reservation of an easement to the Undisputed Lands by public communication on August 18, 1983, the date it received the Decision and Draft Tentative Approval. Ex. 7 at 6 ("Excepting and reserving to the United States a right-of-way thereon for ditches or canals constructed by the authority of the United States under the Act of August 30, 1890 (25 Stat. 391, 43 U.S.C. 945 . . . .")); Ex. 9 (confirming receipt of Decision and Draft Tentative Approval designating the Chilikadrotna as nonnavigable). Moreover, the official surveys identifying the meanderable and navigable waters within the townships, if any, were officially filed in May of 2007 and publicly available before the proposed patent was issued. But Alaska certainly received notice by no later than October 15, 2007, when the United States issued the 2007 Patent containing the formal reservation of easement rights for ditches and canals. Ex. 15. Alaska did not file its Complaint until April 26, 2022, well after the twelve-year period based on issuance of the 2007 Patent had expired. *See Mesa Grande Band of Mission Indians v. Salazar*, 657 F. Supp. 2d 1169, 1177 (S.D. Cal. 2009) (plaintiff's claim accrued either upon issuance of patent or

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
30

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 37 of 44

upon administrative rejection of relief). Thus, the State's Quiet Title Act claim concerning the Undisputed Lands is time-barred.[14]

## III.  The State's Declaratory Judgment Act Claim Must be Dismissed

In addition to its Quiet Title Act claim, Alaska asserts a separate claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  Sec. Am. Compl. ¶¶ 65-70.  Alaska seeks a court order that would declare that the Subject Waters are navigable-in-fact, quiet title to the Subject Submerged Lands, *and* rewrite an administrative decision by now declaring that all "the Subject Submerged Lands were not chargeable against the State's [Alaska] Statehood Act land entitlement."  *Id.* at Prayer for Relief ¶¶ 1-4.  In essence, Alaska is seeking certain relief that only the Quiet Title Act can provide, and seeking other relief that only the Administrative Procedure Act can provide.  Thus, Rule 12(b)(1) dictates Alaska's Declaratory Judgment Act claim must be dismissed for several reasons.

First, the majority of Alaska's Declaratory Judgment Claim and corresponding requests for relief can only be brought under the Quiet Title Act.  The Quiet Title Act is

---

[14] The State was not left without recourse by BLM's decision that the Chilikadrotna within the Undisputed Lands counted against the State's Statehood Act entitlement. Without conceding that any such claim would have merit, the State could have appealed the 1983 Decision and Tentative Approval to the Interior Board of Land Appeals and pursued judicial review of the agency actions. The State could have protested the 2007 Patent.  43 C.F.R. § 4.450-2.  The State may also have appealed the 2007 Patent, which conveyed the land with the acreage clearly labeled and was based on an official survey which likewise clearly included the riverbed.  43 C.F.R. § 4.410.  The Administrative Procedure Act provides a limited waiver of sovereign immunity to allow such a suit.  5 U.S.C. § 702.  But any such claim would likewise be subject to and barred by the APA's six-year statute of limitations.  28 U.S.C. § 2401(a). Therefore, the State's claim concerning the Undisputed Lands cannot be salvaged and should be dismissed with prejudice.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

31

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 38 of 44

the "exclusive means by which adverse claimants [can] challenge the United States' title to real property."  *Block*, 461 U.S. at 286; *see McMaster v. United States*, 731 F.3d 881, 900 (9th Cir. 2013) (applying *Block*'s holding to Declaratory Judgment Act claims); *Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1178 (E.D. Cal. 2007) ("A claim that seeks a title determination against the United States can only be brought under the Quiet Title Act, not the Declaratory Judgment Act or any other law."). Therefore, where a plaintiff brings a Declaratory Judgment Act claim that effectively seeks to quiet title, the Declaratory Judgment Act claim must be dismissed.  *See, e.g.*, *Owyhee Cnty. v. United States*, No. 1:21-cv-00070-CWD, 2022 WL 60627, at *3 (D. Idaho Jan. 5, 2022) (dismissing with prejudice plaintiff's Declaratory Judgment Act claims but granting plaintiff leave to amend its Quiet Title Act claims); *Saving America's Mustangs v. Bureau of Land Mgmt.*, No. 3:16-cv-00733, 2017 WL 13171261, at *2 (D. Nev. April 13, 2017) (dismissing as "superfluous" and "redundant" plaintiff's Declaratory Judgment Act claim and only retaining declaratory relief that "is appropriately crafted to a quiet title claim").

In this case, to the extent Alaska seeks a declaration that (1) the Subject Waters are navigable-in-fact, (2) there were no pre-statehood withdrawals that could defeat its interest, (3) Alaska owns title to the Subject Submerged Lands, and (4) the United States owns no title or interest in the Subject Submerged Lands, such claims are all, in effect, claims to quiet title in the Subject Submerged Lands.  Accordingly, Alaska's Declaratory

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

32

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 39 of 44

Judgment Act claim must be dismissed, and any such relief may only be afforded, if at all, on the basis of the Quiet Title Act.

Second, Alaska's claim requesting a declaration that the "Subject Submerged Lands . . . were not chargeable against the State's Alaska Statehood Act land entitlement," Sec. Am. Compl. ¶ 70, is fundamentally flawed. This "chargeability" claim is not a title dispute, and thus, seeks relief that the Quiet Title Act cannot provide. Waivers of sovereign immunity must be narrowly construed. *E.g.*, *Lane v. Pena*, 518 U.S. 187, 195 (1996). The Quiet Title Act only waives the United States' sovereign immunity for purposes of "adjudicat[ing] a disputed title to real property." 28 U.S.C. § 2409a. It does not authorize the waiver of sovereign immunity for purposes of revisiting an administrative agency action that determined whether and how the grant of that title should be debited against a separate, statutorily provided acreage amount. Such a claim may only be brought, if at all, pursuant to a timely-filed action under Administrative Procedure Act, 5 U.S.C. §§ 701, *et seq.* Just as a claimant cannot "avoid the QTA by characterizing their complaint as a challenge to the federal government's regulatory authority," *Shawnee Trail Conservancy v. U.S. Dep't of Agriculture*, 222 F.3d 383, 388 (7th Cir. 2000), Alaska cannot side-step the requirements of the APA by characterizing their attack on federal agency action as an effort to quiet title. This is precisely the sort of "artful pleading" intended to circumvent Congressional pleading

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

33

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 40 of 44

requirements that the Supreme Court has repeatedly denounced. *Block*, 461 U.S. at 285 (quoting *Brown v. GSA*, 425 U.S. 820, 833 (1976)).[15]

Nor can Alaska cure this pleading defect. Any APA claim challenging the United States' acreage determination is necessarily time-barred by the applicable six-year limitations period and would have lapsed no later than 2013. *See* 28 U.S.C. § 2401(a). Accordingly, Alaska's "chargeability" claim and prayer for relief must be dismissed with prejudice.

Finally, if the Court concludes it must dismiss Alaska's claims over the Undisputed Lands, any related declaratory claim or request for relief as to those Lands must also be dismissed. The Declaratory Judgment Act provides a remedy, not an independent source of subject matter jurisdiction. *See Compass Airlines, LLC v. Mont. Dep't of Labor & Indus.*, 914 F. Supp. 2d 1170, 1174 (D. Mont. 2012). Even if Alaska could bring a separate Declaratory Judgment Act claim alongside its Quiet Title Act claim, dismissal of its Quiet Title Act claim as to the Undisputed Land would necessitate dismissal of any declaratory claims and requests for relief as to those same Lands. *See McMaster*, 731 F.3d at 900 (dismissing plaintiff's Quiet Title Act claim and concluding "the crux of [plaintiff's] DJA claims is that [plaintiff] is entitled to fee-simple ownership of his . . . mining claim" and "[t]hus, [plaintiff's] DJA claims must also fail."); *see also*

---

[15] To the extent Alaska seeks this relief with respect to the twelve townships constituting the Disputed Lands, such relief is also unavailable because the State has not selected those lands, and therefore, the acreage in this area cannot be charged to the State's Alaska Statehood Act land entitlement.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG
34

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 41 of 44

*City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) (quoting *Schilling v. Rogers*, 363 U.S. 666, 677 (1960)) ("The availability of relief under the Declaratory Judgment Act 'presupposes the existence of a judicially remediable right.'").

In sum, to the extent Alaska seeks declaratory relief determining ownership and quieting title—relief that is ordinarily available under the Quiet Title Act—such relief is absorbed by Alaska's Quiet Title claim and Alaska's Declaratory Judgment Act claim must be dismissed. Alaska's further request for a declaration that lands are not chargeable against its Alaska Statehood Act entitlement, however, is not a title dispute and requests relief beyond that which the Quiet Title Act's narrow waiver of sovereign immunity can confer, and per Rule 12(b)(1), must be dismissed with prejudice.

## CONCLUSION

Alaska has failed to show that the United States waived sovereign immunity under the Quiet Title Act with respect to the Undisputed Lands because it cannot prove a dispute to title exists. Alternatively, Alaska's claim as it relates to the Undisputed Lands is barred by the Quiet Title Act's statute of limitations. As the Quiet Title Act is the exclusive means to challenge the United States' title to real property, Alaska's Declaratory Judgment Act claim relating to all the Subject Submerged Lands must fall as well. Finally, to the extent Alaska asserts a claim and seeks relief beyond that which the Quiet Title Act can provide in the form of revisiting an administrative agency decision regarding the calculation of acreage drawn from the State's Alaska Statehood Act entitlement, such claim and request for relief must be dismissed with prejudice.

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

35

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 42 of 44

DATED:  October 31, 2023.

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Michael K. Robertson*
MICHAEL K. ROBERTSON
Trial Attorney
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Phone 202-305-9609 || Fax 202-305-0506
michael.robertson@usdoj.gov

*Counsel for Defendant*

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

36

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 43 of 44

**CERTIFICATE OF WORD COUNT**

In accordance with Local Civil Rule 7.4(a)(1), I certify that the foregoing, exclusive of the items listed in Local Civil Rule 7.4(a)(4), contains 9,590 words.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2023 a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

/s/ Michael K. Robertson
MICHAEL K. ROBERTSON

*State of Alaska v. Unites States of America*
Def.'s Renewed Partial Mot. to Dismiss
No: 3:22-cv-00103-SLG

37

Case 3:22-cv-00103-SLG   Document 50   Filed 10/31/23   Page 44 of 44