# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

STATE OF ALASKA,

                Plaintiff,

      v.

UNITED STATES OF AMERICA,

                Defendant.

Case No. 3:22-cv-00103-SLG

## <u>ORDER RE RENEWED PARTIAL MOTION TO DISMISS</u>

Before the Court at Docket 50 is Defendant United States of America's ("United States") Renewed Partial Motion to Dismiss. Plaintiff State of Alaska ("State") responded in opposition at Docket 58, to which the United States replied at Docket 59. Oral argument on the motion was held on October 11, 2024.

## BACKGROUND

This case concerns an action brought by the State pursuant to the Quiet Title Act ("QTA"), 28 U.S.C. § 2409a, seeking to quiet title against the United States to submerged lands (the "Subject Submerged Lands") underlying portions of waterbodies located in and around Lake Clark National Park and Preserve, namely, the Twin Lakes, the Chilikadrotna River, Turquoise Lake, and the

Mulchatna River (the "Subject Waters").[1] The State also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.[2]

In 1972, pursuant to the Alaska Statehood Act ("Statehood Act"),[3] the State selected for conveyance from the federal government to the State a group of public lands located in townships that include the Subject Waters.[4] The State's selection included submerged lands beneath the Chilikadrotna River in three particular townships that the United States refers to as the "Undisputed Lands,"[5] the State now refers to as the "Disputed Easement Lands,"[6] and the Court will refer to as the "Three Township Submerged Lands." The three townships are found at T. 7 N., R. 29 W., Seward Meridian ("S.M."); T. 6 N., R. 30 W., S.M.; and T. 5 N., R. 30 W., S.M.[7] The State reasserted its selection of the Three Township Submerged Lands on two separate occasions in 1981 and 1993, subject to a general disclaimer that its selection "exclude[s] those submerged lands and shorelands which underlie nontidal waters that were navigable under laws of the United States

_____

[1] Docket 47 at ¶¶ 1–5 (2d Am. Compl.).

[2] Docket 47 at ¶¶ 4–5.

[3] Pub. L. No. 85-508, 72 Stat. 339 (1958).

[4] Docket 50-3 (Jan. 24, 1972, State Selection Letter); Docket 47 at ¶¶ 14–17.

[5] Docket 50 at 8.

[6] Earlier in this case, the State, "to avoid confusion," also referred to these lands as the "Undisputed Lands," but it has since changed its designation to the "Disputed Easement Lands." *Compare* Docket 22 at 4 n.2, *with* Docket 58 at 13 n.7.

[7] *See* Docket 47 at ¶¶ 45–46; Docket 50 at 20.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 2 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 2 of 29

on the date of Alaska's admission to the Union, which lands have passed into Alaska's ownership . . . by operation of the Submerged Lands Act of 1953 and Section 6(m) of the Alaska Statehood Act."[8] Under the equal footing doctrine, each new state admitted to the Union succeeds upon statehood to the federal interest in submerged lands covered by navigable waters at the time of statehood; if the waters were not navigable at statehood, then the federal government retains ownership of the submerged lands.[9] "The Submerged Lands Act gave Alaska title to the beds of navigable rivers on January 3, 1959[,]" the date that Alaska was admitted to the Union as a state.[10]

In 1983, after studying the State's selections, the Bureau of Land Management ("BLM") determined that the portions of the Chilikadrotna River above the Three Township Submerged Lands were non-navigable at statehood.[11]

---

[8] Docket 44 at 2 n.4 (first quoting Docket 20-6 at 1–2 (Aug. 17, 1981, State Top Filing Letter); and then citing Docket 20-7 (Dec. 20, 1993, State Top Filing Letter)). The State notes that the United States omitted these two filing letters as exhibits from the instant partial motion to dismiss, Docket 58 at 17 n.9, but the Court is not certain why that matters. The State did not previously object to these or any of the United States' exhibits filed in support of the United States' initial partial motion to dismiss. *See generally* Docket 22. The State's request that the Court not consider any of the United States' exhibits for the instant partial motion to dismiss is addressed *infra* Discussion Section I.

[9] *See Alaska v. United States*, 201 F.3d 1154, 1156 (9th Cir. 2000). The United States may, however, retain title to submerged land below navigable waters by "setting them aside before statehood in a way that shows an intent to retain title." *Alaska v. United States*, 545 U.S. 75, 79 (2005).

[10] *Alaska*, 201 F.3d at 1156 (first citing 43 U.S.C. §§ 1301–1315; and then citing *Alaska v. Ahtna, Inc.,* 891 F.2d 1401 (9th Cir.1989)).

[11] Docket 50-5 at 1, 3 (May 23, 1983, Navigability Determination) (determining that all waterbodies within T. 6 N., R. 30 W., S.M., and T. 5 N., R. 30 W., S.M., are non-navigable; Docket 50-6 at 1 (Aug. 17, 1983, Navigability Determination) (determining that "the Chilikadrotna River and all remaining water bodies" in T. 7 N., R. 29 W., S.M., are non-

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 3 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 3 of 29

On August 17, 1983, BLM issued a decision and draft tentative approval of the State's selections, including the Three Township Submerged Lands, but noted its navigability determination of the Chilikadrotna River above those lands and advised the State of its right to appeal the decision to the Department of the Interior's ("DOI") Board of Land Appeals ("IBLA") within 30 days.[12]

On September 16, 1983, the State sent BLM a letter disputing BLM's navigability determination as to the Chilikadrotna River.[13] On October 18, 1983, BLM acknowledged receipt of the State's letter but stated that it was "unable to reverse [its navigability] decision at this time."[14] The letter further stated that BLM would "reevaluate [its] determination on the Chilikadrotna [River]" if the IBLA upheld a recommended navigability determination on a different river, the Matanuska River, and "would welcome any additional information [the State] might have at that time."[15] The State did not appeal BLM's Chilikadrotna River navigability determination to the IBLA.[16]

---

navigable).

[12] Docket 50-7 at 1, 3, 5 (Aug. 17, 1983, Decision and Draft Tentative Approval). BLM then finalized its tentative approval on September 29, 1983. Docket 50-8 (Sept. 29, 1983, Final Tentative Approval).

[13] Docket 50-9 (Sept. 16, 1983, State Letter).

[14] Docket 50-10 at 1 (Oct. 18, 1983, BLM Letter).

[15] Docket 50-10 at 1.

[16] *See* Docket 50 at 22 (asserting that "the State declined to appeal BLM's [navigability] decision"); *see generally* Docket 58 (making no assertion that the State appealed the navigability determination).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 4 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 4 of 29

BLM later conveyed the selected lands, including the Three Township Submerged Lands, to the State through a patent issued on October 15, 2007 ("2007 patent" or "patent").[17] As required by the Canal Act of 1890, the patent reserved a right-of-way for the construction of ditches or canals to the United States.[18] The State did not appeal the 2007 patent issuance.[19]

The State filed this action in April 2022.[20] In December 2022, the United States filed its first motion to dismiss the State's claim as to the Three Township Submerged Lands.[21] The Court granted that motion because the State's First Amended Complaint failed to allege with specificity the property interest claimed by the United States in the Three Township Submerged Lands; the Court thus held that it lacked subject matter jurisdiction over the State's claim as to those lands, but accorded leave to amend to the State.[22] Following the State's filing of its

---

[17] Docket 50-15 (Oct. 15, 2007, Patent).

[18] Docket 50-15 at 4 ("EXCEPTING AND RESERVING TO THE UNITED STATES a right of way thereon for ditches or canals constructed by the authority of the United States. Act of August 30, 1890, 43 U.S.C. § 945[.]").

[19] *See* Docket 50 at 38 n.14 (United States asserting that the State could have appealed the 2007 patent and brought suit under the Administrative Procedure Act ("APA"), but that it did not do so, and that such a suit would now be barred by the APA's six-year statute of limitations); Docket 58 at 40–41,41 n.18 (State asserting that an APA claim would not be mature until "BLM denies a State application for patent of selected lands because BLM believes the State's entitlement [pursuant to the Statehood Act] is exhausted"). *But see infra* note 78. The timing of an APA claim is addressed *infra* Discussion Section III.

[20] *See* Docket 1.

[21] Docket 20.

[22] Docket 44 at 8–9.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 5 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 5 of 29

Second Amended Complaint[23] purporting to rectify the deficiency in the First Amended Complaint, the United States filed the instant renewed partial motion to dismiss asserting that, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court continues to lack subject matter jurisdiction over both the State's QTA claim pertaining to the Three Township Submerged Lands and the State's Declaratory Judgment Act claim in its entirety.[24]  In the alternative, the United States contends that the Three Township Submerged Lands QTA claim is barred by the QTA's 12-year statute of limitations and should be dismissed pursuant to Rule 12(b)(6).[25]

The State's position, however, is that the segments of the Chilikadrotna River above the Three Township Submerged Lands were navigable at statehood and that title to those lands therefore automatically passed to the State at statehood under the equal footing doctrine, the Submerged Lands Act, and the Alaska Statehood Act.[26]  The State thus asserts that the 2007 patent conveying the Three Township Submerged Lands to Alaska is unlawful because following statehood, the United States no longer owned any interest in these submerged lands, and the lands "were neither available for selection nor chargeable against

---

[23] Docket 47.

[24] Docket 50 at 8, 28, 38.

[25] Docket 50 at 9, 33.

[26] Docket 58 at 13–14; *see also* Docket 47 at ¶¶ 19–23 (alleging that the equal footing doctrine, which was codified in the Submerged Lands Act and extended to Alaska in the Alaska Statehood Act, guarantees Alaska "title ownership to lands underlying navigable and tidally influenced waters").

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 6 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 6 of 29

Alaska Statehood Act land entitlements."[27]  The State maintains that BLM's "erroneous" navigability determination of the Chilikadrotna River in 1983 and the resulting 2007 patent "cast a cloud on the rights and title of the State."[28]  The State seeks a "declaration from this Court confirming that title to the [Three Township Submerged Lands] vested in the State under the equal footing doctrine."[29]  Such a declaration would, the State asserts, remedy the two impacts of the United States' erroneous navigability determination: first, the improper reduction of the State's total Statehood Act entitlement by approximately 240 acres, because the Three Township Submerged Lands were charged against that entitlement; and second, the improper right-of-way reservation to the United States on the Three Township Submerged Lands as provided in the 2007 patent.[30]

## LEGAL STANDARD

A lack of subject matter jurisdiction, including lack of jurisdiction on sovereign immunity grounds, necessitates dismissal under Federal Rule of Civil Procedure 12(b)(1).[31]  "Suits against the government are barred for lack of subject

---

[27] Docket 58 at 14–15; *see also* Docket 47 at ¶¶ 44, 59–62.

[28] Docket 58 at 15; *see also* Docket 47 at ¶¶ 26, 49.

[29] Docket 58 at 16; *see also* Docket 47 at 16.

[30] Docket 58 at 15–16; *see also* Docket 47 at ¶¶ 46–48.

[31] *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Morkal v. Hawks*, Case No. 3:12-cv-00218, 2015 WL 6159335, at *2 (D. Alaska Oct. 19, 2015) (citing *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012)).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 7 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 7 of 29

matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity."[32] "A Rule 12(b)(1) jurisdictional attack may be facial or factual."[33] "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."[34] In a factual attack, the challenger "attack[s] the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rel[ies] on affidavits or any other evidence properly before the court."[35] When resolving a factual attack on jurisdiction, a "court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" and "need not presume the truthfulness of the plaintiff's allegations."[36]

Motions to dismiss based on non-jurisdictional statutes of limitations are properly brought not through Rule 12(b)(1), but through Rule 12(b)(6).[37] "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[38] Although a court must accept as true the plaintiff's allegations for

---

[32] *Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014).

[33] *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

[34] *Id.*

[35] *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

[36] *Safe Air for Everyone*, 373 F.3d at 1039.

[37] *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 n.2 (9th Cir. 1995).

[38] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 8 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 8 of 29

the purposes of a Rule 12(b)(6) motion, it may nonetheless take judicial notice of "matters of public record" pursuant to Federal Rule of Evidence 201.[39] A court may properly take judicial notice of public documents such as land surveys and correspondence from or to federal agencies.[40] Additionally, "the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations."[41]

## DISCUSSION

The Court first addresses consideration of the United States' exhibits submitted in support of its renewed partial motion to dismiss before addressing the substantive aspects of the motion.

### I. Judicial Notice and Incorporation by Reference of the United States' Exhibits

The State urges the Court to disregard the exhibits filed by the United States in support of its renewed partial motion to dismiss.[42] In the alternative, the State requests a stay of the instant motion "pending discovery and an opportunity to be

---

570 (2007)).

[39] *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citations omitted).

[40] *See, e.g.*, *Chemehuevi Indian Tribe v. McMahon*, Case No. 5:15-cv-1538-DMG (FFM), 2017 WL 6883765, at *6 (C.D. Cal. Sept. 5, 2017) (taking judicial notice of letters to the Commissioner of Indian Affairs, a letter from the Commissioner of Indian Affairs to the Secretary of the Interior, a land survey, and a trust patent), *aff'd in part, vacated in part on other grounds*, 934 F.3d 1076 (9th Cir. 2019).

[41] *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016) (citing *Twombly*, 550 U.S. at 555–56).

[42] Docket 58 at 17–19.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 9 of 29

heard."[43]  The United States filed 16 exhibits in support of its motion and asserts that the exhibits "are matters of public record and include agency records, letters, and reports that are subject to judicial notice."[44]  The United States also asserts that the Court may incorporate the exhibits by reference because "Alaska's claims necessarily depend on its acquisition of certain townships through the Statehood Act conveyance process," and the "exhibits evidence each of the steps in that mandated process including the State selection, related correspondence, navigability determinations, tentative approvals, official surveys, and the issued patent."[45]  The State, however, contends that the documents were not "lawfully issued" and did not "correctly determine[] the navigability status of the Subject Waters" and that the Court therefore "cannot take judicial notice of disputed facts contained in such public records."[46]  The State also contests incorporation of the exhibits by reference, asserting that the United States is "improperly attempting to create its own factual record, without affording the State an opportunity to conduct discovery or respond meaningfully to these alternative facts."[47]

---

[43] Docket 58 at 19 (footnote omitted) (citing Fed. R. Evid. 201(e)).

[44] Docket 50 at 27 n.6 (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1000–01 (9th Cir. 2018)); *see also* Dockets 50-1 through 50-16.

[45] Docket 50 at 27 n.6 (citing *Khoja*, 899 F.3d at 1002).

[46] Docket 58 at 18 (quoting *Khoja*, 899 F.3d at 999).

[47] Docket 58 at 19.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 10 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 10 of 29

Judicial notice under Federal Rule of Evidence 201 permits a court to notice an adjudicative fact if it is "not subject to reasonable dispute." A fact is "not subject to reasonable dispute" if it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[48] "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.' But a court cannot take judicial notice of disputed facts contained in such public records."[49]

In contrast, "incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself. The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."[50] "[A] defendant may seek to incorporate a document into the complaint 'if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim'"; but "the mere mention of the existence of a document is insufficient to incorporate the contents of a document."[51] If a

---

[48] Fed. R. Evid. 201(b).

[49] *Khoja*, 899 F.3d at 999 (alteration in original) (citation omitted).

[50] *Id.* at 1002.

[51] *Id.* (citation omitted).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 11 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 11 of 29

document "merely creates a defense to the well-pled allegations in the complaint, then that document [does] not necessarily form the basis of the complaint."[52]

The Court will consider all 16 of the exhibits submitted by the United States, found at Dockets 50-1 through 50-16, because those exhibits, except Docket 50-1, are either incorporated by reference through the Second Amended Complaint or may be judicially noticed. Docket 50-1 is a declaration by David Mushovic, Deputy State Director of Lands, Cadastral Survey, and Pipeline Monitoring for the Alaska State office of the BLM, generally describing each of the other exhibits. Because the State does not appear to dispute this exhibit and because it is administrative in nature, the Court will also consider this exhibit.[53]

Specifically, the following documents are incorporated by reference: (1) Docket 50-10, the October 18, 1983, letter from BLM confirming the decision designating the Chilikadrotna River non-navigable; and (2) Docket 50-15, the October 15, 2007, Patent conveying the Three Township Submerged Lands to the State. These two documents, which consist of the disputed BLM navigability determination and the right-of-way reserved to the United States on the Three Township Submerged Lands, are cited by the State in its Second Amended Complaint and decidedly "form[] the basis of the [State's] claim."[54]

---

[52] *Id.*

[53] *See* Docket 58 at 17–19.

[54] *See* Docket 47 at ¶¶ 25, 45, 48; *Khoja*, 899 F.3d at 1002.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 12 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 12 of 29

The Court takes judicial notice of the remaining exhibits because they are "matters of public record."[55] The remaining exhibits are all either official correspondence between the State and DOI or official agency determinations.[56] While the Court does not take judicial notice of disputed assertions of fact contained in the exhibits—such as the navigability of the Chilikadrotna River or the lawful reservation of an easement on the Three Township Submerged Lands—the Court does take judicial notice of the existence of BLM's records and determinations, which are adjudicative facts "not subject to reasonable dispute."[57] In other words, as to these documents, the Court takes judicial notice only that they were issued and of what they purport to say, not that the statements within them are necessarily true.

Lastly on this topic, the Court declines to grant a stay so that the State may conduct additional discovery, such as discovery into any reevaluation conducted by BLM on its navigability determination for the Chilikadrotna River following its navigability determination for the Matanuska River, or examination of the historic uses of the Chilikadrotna River as potential support for a finding of navigability.[58] As the United States points out, the 2007 patent "ended the conveyance process

---

[55] *Khoja*, 899 F.3d at 999 (citation omitted).

[56] *See* Dockets 50-2 through 50-9; Dockets 50-11 through 50-14; Docket 50-16.

[57] Fed. R. Evid. 201(b).

[58] *See* Docket 58 at 19 n.10.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 13 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 13 of 29

for the [Three Township Submerged Lands]"; any question as to BLM's final navigability determination was resolved by that patent's issuance.[59] Further, the State was an active participant in the conveyance process, and as such it would presumably possess any other relevant documents that it could have submitted for consideration by the Court. Accordingly, the Court finds that further discovery is unnecessary to the resolution of the instant motion and so denies the State's request for additional discovery.

## II. The Three Township Submerged Lands Quiet Title Act Claim

The United States asserts that the Court lacks jurisdiction over the Three Township Submerged Lands because the United States has not waived its sovereign immunity under the Quiet Title Act as to those lands.[60] "[T]wo conditions must exist before a district court can exercise jurisdiction over an action under the Quiet Title Act: 1) the United States must claim an interest in the property at issue; and 2) there must be a disputed title to real property between interests of the plaintiff and the United States."[61]

---

[59] Docket 59 at 16.

[60] Docket 50 at 28; *see Mills v. United States*, 742 F.3d 400, 404 (9th Cir. 2014) ("Suits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity.").

[61] *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1023 (9th Cir. 2001) [hereinafter *Leisnoi II*] (first citing *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191–92 (9th Cir. 1999) [hereinafter *Leisnoi I*]; and then citing 28 U.S.C. § 2409a(a)).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 14 of 29

An easement satisfies the first requirement,[62] which "may be met by an interest of the United States in the property in issue even if that interest is undisputed."[63] As to the second requirement, "[f]or a title to be disputed for purposes of the QTA, the United States must have adopted a position in conflict with a third party regarding that title."[64] A plaintiff must show that the United States has either "expressly dispute[d]" the title or "taken an action that implicitly disputes" it.[65] "In construing the scope of the QTA's waiver, [the Ninth Circuit has] read narrowly the requirement that the title at issue be 'disputed.'"[66] Thus, even though the United States may reserve the right to assert a claim with respect to certain real property in the future, "[a] title cannot be said to be 'disputed' by the United States if it has never disputed it."[67]

The United States "concedes that Alaska has satisfied the first requirement" with the filing of its Second Amended Complaint, which alleges that the United States "reserve[d] a real property interest, namely a right-of-way for the construction of ditches or canals on [the Three Township Submerged Lands]."[68]

---

[62] *See Leisnoi I*, 170 F.3d at 1191 ("It is well settled that an easement is an interest in real property.").

[63] *Leisnoi II*, 267 F.3d at 1024.

[64] *Mills*, 742 F.3d at 405 (citing *Alaska v. United States*, 201 F.3d 1154, 1164–65 (9th Cir. 2000)).

[65] *Mills*, 742 F.3d at 405.

[66] *Id.* (citing *Alaska*, 201 F.3d at 1164–65).

[67] *Mills*, 742 F.3d at 405 (alteration in original) (quoting *Alaska*, 201 F.3d at 1165).

[68] Docket 50 at 28 (acknowledging that "the United States reserved a floating easement in the

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 15 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 15 of 29

However, the United States maintains that the second requirement has not been met. The United States asserts that the Second Amended Complaint contains only the conclusory allegation that the reserved easement "is adverse to the title of the State and is in dispute between the parties[,]" and does not contain any "factual allegations showing a *disputed* title to real property."[69] "For example, there is no allegation that the United States is seeking to construct, or will ever construct, a ditch or canal on the [Three Township Submerged Lands] that would infringe on [the State's] property interests. Nor is there any allegation that [the State] has been prevented by the reserved easement from taking any affirmative steps of its own to use, manage, or dispose of [those lands]."[70] The reservation of the easement alone, the United States contends, "does not create any present dispute of title" as it "does little more than memorialize the United States' inherent eminent domain authority" to "construct a ditch or canal in exchange for providing just compensation to the underlying landowner."[71]

In response, the State maintains that the United States' "continued assertion of a legally infirm easement embodies the dispute."[72] That is, according to the

---

2007 patent"); Docket 47 at ¶ 48.

[69] Docket 50 at 29 (emphasis in original) (quoting Docket 47 at ¶ 50).

[70] Docket 50 at 31 (citing *Leisnoi II*, 267 F.3d at 1021).

[71] Docket 50 at 24 (first citing *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 488 (2021); and then citing 43 U.S.C. § 945a).

[72] Docket 58 at 20.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 16 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 16 of 29

State, "[t]itle to the [Three Township Submerged Lands] vested in the State in 1959[;] therefore[,] Defendant held no interest in the [Three Township Submerged Lands] in 2007 when it issued a patent to the State, let alone any interest from which it could reserve the purported right[]-of-way."[73] The State contends that it was due to "BLM's flawed 1983 non-navigability determination" that the United States was able to claim an interest by reserving a right-of-way, which "is adverse to the title of the State and obviously is in dispute between the parties."[74]

The State's argument here is unavailing for two reasons. First, the State's QTA challenge with respect to the Three Township Submerged Lands appears to be a de facto challenge to BLM's 1983 navigability determination of the Chilikadrotna River and the resulting 2007 patent issuance conveying the Three Township Submerged Lands from the United States to the State. A proper challenge to those agency actions could have been brought through the Administrative Procedure Act ("APA"), not the Quiet Title Act.[75] Indeed, the August 1983 decision letter setting forth BLM's navigability determination expressly stated

---

[73] Docket 58 at 20 (citing Docket 47 at ¶¶ 42–50, 57–64).

[74] Docket 58 at 20–21 (citing Docket 47 at ¶¶ 42–50).

[75] *See Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1059 (9th Cir. 2003) ("The . . . APA . . . governs judicial review of agency action."), *amended on reh'g*, 360 F.3d 1374 (9th Cir. 2004); *McIntyre v. United States*, 490 F. Supp. 830, 832 (D. Alaska 1980) ("Any modification or revocation of the [land] patent by this court would result from a grant of equitable relief under the APA.").

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 17 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 17 of 29

that the State could appeal BLM's decision to the IBLA.[76] If an appeal to the IBLA was unsuccessful, the State could then have brought an APA suit in federal court to challenge BLM's actions.[77] Likewise, as the State acknowledged at oral argument, the State could have brought an APA appeal as to the patent's issuance in 2007.[78] The APA's six-year statute of limitations, however, has long since passed for both of BLM's decisions at issue.[79]

Second, to satisfy the QTA's second requirement "that the title at issue be 'disputed[,]'" the State must show that the United States' reservation is "in conflict" with the State's title.[80] The Court finds that when Congress mandates that the United States reserve an interest in patented lands, and the reservation effectively memorializes the federal government's constitutional authority of eminent domain, that reservation alone is not sufficiently "in conflict" with the patent holder's title to

---

[76] Docket 50-7 at 3 (citing 43 C.F.R. Pt. 4, Subpt. E).

[77] *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review."); *Doria Mining & Eng'g Corp. v. Morton*, 608 F.2d 1255, 1257 (9th Cir. 1979) ("The district courts have jurisdiction to review administrative decisions of the Secretary of the Interior pursuant to 28 U.S.C. § 1331(a).").

[78] Docket 67 at 16:8–20 (Oral Arg. Tr.) ("THE COURT: So why isn't the 2007 patent an injury to the State? [THE STATE]: It is . . . THE COURT: So could – so could an APA claim have been brought then? [THE STATE]: Yes."); Docket 67 at 22:18–19 ("[THE STATE]: [I]n the future, we probably will – would bring APA claims against the patents as they issue.").

[79] *See* 28 U.S.C. § 2401(a); *United States v. Est. of Hage*, 810 F.3d 712, 720 (9th Cir. 2016) ("The six-year statute of limitations found in 28 U.S.C. § 2401(a) applies to APA claims.").

[80] *Mills*, 742 F.3d at 405.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 18 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 18 of 29

waive the United States' sovereign immunity.[81] This narrow reading of the QTA is consistent with the general principle that "[s]uits against the government are barred for lack of subject matter jurisdiction unless the government expressly and unequivocally waives its sovereign immunity."[82] The Court finds no indication that Congress, in passing the Canal Act of 1890 and the QTA, intended to automatically confer a waiver of sovereign immunity for suits based solely on the United States' statutorily required reservation of a right of way.

In the instant case, the United States does not dispute "that Alaska received title to and is owner of the [Three Township Submerged Lands,]"[83] and the State does not contest that the United States' easement effectively memorializes the United States' power of eminent domain.[84] The reservation of the easement in the 2007 patent therefore creates no more conflict with the State's title than that created by the United States' inherent eminent domain authority.[85] Put simply, the

---

[81] Cf. *Leisnoi I*, 170 F.3d at 1191–92 (indicating that the parties did not dispute the United States' "interests (such as easements) expressly reserved in the patents" nor "statutory restrictions").

[82] *Mills*, 742 F.3d at 405.

[83] Docket 59 at 5.

[84] Although the United States discussed the similarities between the reserved easement and the federal government's eminent domain authority at some length in its opening and reply briefs, and re-raised the point at oral argument, the State did not specifically address the issue in its briefing or at oral argument. *Compare* Docket 50 at 31–32, Docket 59 at 4–6, *and* Docket 67 at 10, *with* Docket 58 at 20–22, *and* Docket 67 at 13–24.

[85] Though not raised by the State, the Court notes that the statutory right of compensation applicable here does not include interest, whereas the constitutional right of compensation under the Fifth Amendment does. *See* 43 U.S.C. § 945a (containing no express provision for an award of interest)*; United States v. 106.64 Acres of Land, More or Less, in Cherry Cnty.*, 264 F. Supp. 199, 201 (D. Neb. 1967) (noting the longstanding rule that interest is allowed as an

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 19 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 19 of 29

federal government may construct a ditch or canal on the Three Township Submerged lands in exchange for just compensation regardless of the easement reserved in the 2007 patent.[86]  No further conflict is alleged.  As the United States points out, the State "does not allege that the United States has prevented it from taking any action with respect to the [Three Township Submerged Lands], nor does [the State] allege that the United States has sought to take any affirmative action of its own with respect to its reserved right-of-way."[87]  Rather, the State contends only that the United States' "continued assertion of a legally infirm easement embodies the dispute."[88]  Thus, because the State fails to otherwise allege how the United States' reserved easement conflicts with the State's title, the State has not met the second QTA requirement that there be a disputed title to real property. Accordingly, the Court finds that the United States has not waived its sovereign

---

element of just compensation under the Fifth Amendment, but finding no right to interest on compensation awarded pursuant to 43 U.S.C. § 945a).  The Court finds this discrepancy between the federal government's eminent domain authority and the effect of the reserved right-of-way in the 2007 patent to be *de minimus,*

[86] *See* 43 U.S.C. § 945a (providing that, when a right-of-way reserved pursuant to 43 U.S.C. § 945 is exercised, the "Secretary of the Interior shall pay just compensation, including severance damages, to the owners of private land utilized for ditches or canals in connection with any reclamation project").

[87] Docket 59 at 5.

[88] Docket 58 at 20. Again, the State's contention that the United States could not have reserved easements in the Three Township Submerged Lands because those lands never belonged to the United States should have been brought not through a QTA claim, but through an APA claim following an administrative appeal of the BLM's navigability determination in 1983 or, at the latest, within six years of the issuance of the 2007 patent. *See infra* Discussion Section III.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 20 of 29

immunity under the QTA, and that the Court lacks jurisdiction over the State's claim as to the Three Township Submerged Lands.

Because the Court lacks jurisdiction over this claim, the Court does not reach the United States' alternative argument that the QTA's statute of limitations bars the State's QTA claim.[89]

### III. Declaratory Judgment Act Claim

The State also brings a claim pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and requests three declarations: (1) that "the Subject Waters were navigable in fact, or susceptible to navigation, at the time of statehood, and remain so today"; (2) "no pre-statehood withdrawal in effect at the time of statehood defeated the State's interest in the Subject Submerged Lands"; and (3) "the Subject Submerged Lands, including the [Three Township Submerged Lands,] were not chargeable against the State's Alaska Statehood Act land entitlement."[90]

The United States contends that the DJA claim must be dismissed in its entirety pursuant to Rule 12(b)(1).[91] The United States asserts that the first two

---

[89] The Court notes that the Ninth Circuit has held that the QTA's 12-year statute of limitations begins to run only after both QTA requirements—a claimed interest by the United States and a disputed title to real property—have been met. *See Leisnoi II*, 267 F.3d at 1024–25. The United States conceded at oral argument that, should the United States ever decide to construct a ditch or canal on the Three Township Submerged Lands, the State could bring a QTA claim at that time. *See* Docket 67 at 9.

[90] Docket 47 at ¶¶ 68–70.

[91] Docket 50 at 38.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 21 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 21 of 29

requested declarations—and any declarations that the State "owns title to the Subject Submerged Lands" or that "the United States owns no title or interest in the Subject Submerged Lands"—"are all, in effect, claims to quiet title" which "can only be brought under the Quiet Title Act."[92]  The United States next asserts that the third request for a "chargeability" declaration "is not a title dispute" reviewable under the QTA but rather a challenge to agency action that "may only be brought . . . pursuant to a timely-filed action under [the] Administrative Procedure Act."[93]

In response, the State maintains that "[a]lthough '[a] claim under the Declaratory Judgment Act may not be used as an end run around the QTA's limited waiver of sovereign immunity,' here, Defendant has waived its sovereign immunity through the Quiet Title Act, and the State is not seeking the same relief sought through its quiet title claim."[94]  The State contends that, while the QTA claim "will establish the ownership interests of the parties" and "foreclos[e] Defendant from continuing to assert an easement interest[,]" the "Declaratory Judgment Act claim, in contrast, . . . seeks a declaration . . . that title to the [Three Township Submerged Lands] vested in the State by operation of the equal footing doctrine," the effect of

---

[92] Docket 50 at 38–40.

[93] Docket 50 at 40.

[94] Docket 58 at 37 (first quoting *Alaska Dep't of Nat. Res. v. United States*, 816 F.3d 580, 586 (9th Cir. 2016); and then citing *United States v. City of Las Cruces*, 289 F.3d 1170, 1181–82 (10th Cir. 2002)).  However, the Court has held that the United States has not waived its sovereign immunity as to the Three Township Submerged Lands. *See supra* Discussion Section II.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 22 of 29

which would "be to return approximately 240 acres to the State's remaining available Statehood Act entitlement."[95]  The difference, the State asserts, is that "an order quieting title will confirm that Defendant holds no interest in the [Three Township Submerged Lands], [but] it may not provide an enforceable mechanism by which the State can be assured that its Statehood Act entitlement is fully restored."[96]  As to the United States' argument that the "chargeability" declaration should have been brought as a claim pursuant to the APA, the State maintained in its briefing that such an APA claim for BLM's "improper implementation of the Statehood Act" would not be mature until "the final agency action[,]" which the State asserts would be "BLM's finding that the State's entitlement was fully satisfied[,]" which has not yet occurred.[97]  However, at oral argument, the State conceded it could have brought an APA claim regarding the issuance of the patent in 2007.[98]

The Court agrees with the United States that the State's DJA claim must be dismissed in its entirety.  The DJA provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking

_____

[95] Docket 58 at 38.

[96] Docket 58 at 38.

[97] Docket 58 at 40–41.

[98] Docket 67 at 16:8–18 ("THE COURT: So why isn't the 2007 patent an injury to the State? [THE STATE]: It is . . . THE COURT: So could – so could an APA claim have been brought then? [THE STATE]: Yes.").

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 23 of 29
Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 23 of 29

such declaration."[99]  The statute "does not create new substantive rights, but merely expands the remedies available in federal courts"[100] "in cases where jurisdiction already exists in the court"; it is not itself a waiver of sovereign immunity.[101]  And where there is a dispute as to real property, the Quiet Title Act "provide[s] the exclusive means by which adverse claimants [can] challenge the United States' title to real property."[102]  The Ninth Circuit has held that, where DJA claims are brought in conjunction with QTA claims, the DJA claims "must fail" when "the crux of [those claims] is that [the plaintiff] is entitled to fee-simple ownership of [real property]."[103]  Thus, "[a] claim that seeks a title determination against the United States can only be brought under the Quiet Title Act, not the Declaratory Judgment Act or any other law."[104]  However, "[t]he QTA is not the exclusive

---

[99] 28 U.S.C. § 2201(a).

[100] *Shell Gulf of Mex. Inc. v. Ctr. for Bio. Diversity, Inc.*, 771 F.3d 632, 635 (9th Cir. 2014).

[101] *Brownell v. Ketcham Wire & Mfg. Co.*, 211 F.2d 121, 128 (9th Cir. 1954) (holding that the Declaratory Judgment Act "is not a consent of the United States to be sued, and merely grants an additional remedy in cases where jurisdiction already exists in the court").

[102] *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983).

[103] *McMaster v. United States*, 731 F.3d 881, 900 (9th Cir. 2013) (applying the Supreme Court's holding that "the QTA is the 'exclusive means by which adverse claimants c[an] challenge the United States' title to real property'" to Declaratory Judgment Act claims) (quoting *Block*, 461 U.S. at 286) (alteration in original).

[104] *Friends of Panamint Valley v. Kempthorne*, 499 F. Supp. 2d 1165, 1178 (E.D. Cal. 2007) (citing *Block*, 461 U.S. at 284–85).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 24 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 24 of 29

remedy for claims that do not 'involv[e] adverse title disputes with the government,' such as claims that are 'founded on administrative wrongdoing.'"[105]

As the United States notes, the State's DJA claim "tries to accomplish two objectives: (1) challenge the United States'[] reservation of a right-of-way on the [Three Township Submerged Lands]; and (2) argue that the United States violated a federal statute (the Alaska Statehood Act) by charging the [Three Township Submerged Lands] against the State[]'s Alaska Statehood Act land entitlement."[106] The State's first challenge is a title dispute that "[could] proceed, if at all, only under the QTA"; accordingly, that DJA claim "must fail."[107]

The State's second challenge—the chargeability issue—"does not involve an adverse claim to title" and is instead "a garden-variety APA claim."[108] That is, the State's "plea to add acreage to its Alaska Statehood Act entitlement is a collateral attack on a past agency decision—not a claim to quiet title—and is

---

[105] *Mills v. United States*, 742 F.3d 400, 405 n.6 (9th Cir. 2014) (alteration in original) (quoting *McMaster*, 731 F.3d at 899) (noting that the plaintiff declined to add a claim under the APA, even though he was afforded the opportunity to do so).

[106] Docket 59 at 16.

[107] *See McMaster*, 731 F.3d at 899–900 (alteration in original) (quoting *Block*, 461 U.S. at 292-93).

[108] *See McMaster*, 731 F.3d at 899 (citing *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 216, 220 (2012)) (explaining that the Supreme Court held in *Patchak* that because the plaintiff "did not claim ownership to the property, but rather, claimed that the government's 'decision to take land into trust violates a federal statute—a garden-variety APA claim,' the Court held that the APA, rather than the QTA, applied").

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 25 of 29
Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 25 of 29

therefore incapable of proceeding based solely on the QTA."[109]  The State itself acknowledges that "[a]lthough an order quieting title will confirm that Defendant holds no interest in the [Three Township Submerged Lands], it may not provide an enforceable mechanism by which the State can be assured that its Statehood Act entitlement is fully restored."[110]  But because the DJA "merely grants an additional remedy in cases where jurisdiction already exists in the court," the State must first establish that this Court has jurisdiction over its "chargeability" challenge.[111]

The United States asserts that the proper vehicle for such a challenge is "through a timely filed APA claim[,]" and the Court agrees.[112]  While the United States maintains that the APA's six-year statute of limitations began to run, at the latest, when the 2007 patent was issued,[113] the State asserted in its briefing that an APA claim "against BLM for its improper implementation of the Statehood Act" will not be mature until "BLM denies a State application for patent of selected lands because BLM believes the State's entitlement is exhausted," with "the final agency action being BLM's finding that the State's entitlement was fully satisfied."[114]

---

[109] Docket 59 at 17 (emphasis omitted).

[110] Docket 58 at 38.

[111] *Brownell*, 211 F.2d at 128.

[112] Docket 59 at 18.

[113] *See* Docket 50 at 41; Docket 59 at 18 n.3.

[114] Docket 58 at 40–41.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 26 of 29

Case 3:22-cv-00103-SLG    Document 68    Filed 11/01/24    Page 26 of 29

The State's argument that it can bring a future APA claim to challenge all of BLM's allegedly improper conveyances of land from the United States to Alaska from the time Alaska became a state in 1959 until some future unknown point is unavailing.[115]  Rather, the Court finds that the proper channel through which the State could have challenged the United States' claim to the Three Township Submerged Lands would have been through an APA claim following an administrative appeal of BLM's navigability determination or, at the latest, following the 2007 patent issuance, or both.[116]  When land is conveyed to the State and charged against the State's Statehood Act land entitlement, the State has already "suffer[ed] an injury from final agency action," because the charge against the State's entitlement means that it has, at that point, suffered a diminution in the remaining amount of land it can select.[117]  The State is thus now time-barred from

---

[115] *See Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 909 (D.C. Cir. 1985) ("[P]etitioners who delay filing requests for review on their own assessment of when an issue is ripe for review do so at the risk of finding their claims time-barred.").

[116] The State contends that BLM's navigability determination was not finalized because, in response to the State's September 1983 letter raising concerns with the determination, BLM noted that it "will reevaluate [its] determination on the Chilikadrotna" after the IBLA ruled on a separate challenge related to the navigability of the Matanuska River.  Docket 58 at 41 n.18; Docket 50-10 at 1.  The State thus maintains that "there has been no 'final agency action' from which the APA's statute of limitations" began to run as to the navigability determination.  Docket 58 at 41 n.18.  The Court disagrees—even if there were questions as to the finality of BLM's 1983 navigability determination, that determination indisputably became final when the United States issued the patent in 2007.

[117] *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2450 (2024) (interpreting 28 U.S.C. § 2401(a), which provides the six-year statute of limitations applicable to APA claims, and holding that the APA cause of action "accrues" when the plaintiff bringing the suit is injured).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 27 of 29

bringing an APA claim as to the chargeability of the Three Township Submerged Lands.[118]

Because the State may not bring an APA claim as to the chargeability of the Three Township Submerged Lands at this time, neither may it bring a challenge under the DJA for the same claim, as the State has not established that "jurisdiction already exists in the court"—here, through the APA.[119]  Accordingly, because the State's DJA claim seeks, first, a remedy that can only be sought under the QTA and, second, a remedy that is now time-barred under the APA, the Court dismisses the State's DJA claim in its entirety.

## CONCLUSION

In light of the foregoing, IT IS ORDERED that the United States' Renewed Partial Motion to Dismiss at Docket 50 is GRANTED.  The State's Quiet Title Act claim as to the Three Township Submerged Lands is DISMISSED without prejudice.  The Court finds that according the State leave to amend its Declaratory

---

[118] Although equitable tolling of an APA claim may be available, it is unwarranted here.  *See WildEarth Guardians v. U.S. Dep't of Just.*, 181 F. Supp. 3d 651, 670 (D. Ariz. 2015) ("The Court finds that the statute of limitations, pursuant to 28 U.S.C. 2401(a), is subject to equitable tolling in the context of an APA claim for judicial review.").  Equitable tolling is "unavailable in most cases" and warranted only when a plaintiff demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation omitted).  Neither of these factors is present here.  The State failed to diligently prosecute its claims despite having actual notice and multiple opportunities to do so over the course of several decades.  It could have filed suit to challenge either the navigability determination in 1983 or the patent issuance in 2007.

[119] *Brownell*, 211 F.2d at 128.

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 28 of 29

Judgment Act claim would be futile, as the claim "could not be saved by any amendment."[120]  Where "further amendment would be futile," a claim is properly dismissed with prejudice.[121]  Accordingly, the State's Declaratory Judgment Act claim is DISMISSED with prejudice.  The United States shall file its answer to the Second Amended Complaint within 14 days of the date of this order.

Consistent with the Court's order at Docket 27, the parties shall participate in a new Rule 26(f) scheduling conference as soon as practicable and, within 21 days of the date of this order, file a Revised Scheduling and Planning Conference Report.

DATED this 1st day of November 2024, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[120] *Ctr. for Bio. Diversity v. U.S. Forest Serv.*, 80 F.4th 943, 956 (9th Cir. 2023) (quoting *Armstrong v. Reynolds*, 22 F.4th 1058, 1071 (9th Cir. 2022).

[121] *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

Case No. 3:22-cv-00103-SLG, *State of Alaska v. United States of America*
Order re Renewed Partial Motion to Dismiss
Page 29 of 29

Case 3:22-cv-00103-SLG     Document 68     Filed 11/01/24     Page 29 of 29